**INTERFAITH COMMUNITY ORGANIZATION; Lawrence Baker; Martha Webb Herring; Margaret Webb; Reverend Winston Clarke; Margarita Navas; Hackensack Riverkeeper, Inc., consolidated plaintiff; William Sheehan, consolidated plaintiff; Plaintiffs,**

v.

**HONEYWELL INTERNATIONAL, INC.; W.R. Grace & Company; ECARG, Inc.; W.R. Grace, Ltd.; Roned Realty of Jersey City, Inc.; Roned Realty of Union, Inc.; Defendants.**

Civil Action No. 95–2097 (DMC).

United States District Court,
D. New Jersey.

June 13, 2002.

David W. Field, Michael J. Caffrey, James Stewart, Lowenstein Sandler, PC, Roseland, NJ, for Honeywell Intern., Inc.

Carolyn Smith Pravlick, Steven J. German, Damian A. Schane, Kathleen L. Millian, Terris, Pravlick & Millian, LLP, Washington, DC, Edward Lloyd, Columbia Law School, New York City, NY, for Interfaith Community Organization, Lawrence Baker, Martha Webb Herring, Margaret Webb, Winston Clarke, Margarita Navas, Hackensack Riverkeeper, Inc., William Sheehan.

William F. Mueller, Clemente, Mueller & Tobia, PA, Morristown, PA, for Roned Realty of Jersey City, Inc., Roned Realty of Union City.

Christopher H. Marraro, William Hughes, Angela Pelletier, Wallace King Marraro & Branson, PLLC, Washington, DC, John Michael Agnello, Melissa E. Flax, Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, Roseland, NJ, for W.R. Grace & Co., Ecarg, Inc., W.R. Grace, Ltd.

## OPINION

CAVANAUGH, District Judge.

This matter comes before the Court on motion by Defendants Roned Realty of Jersey City, Inc. and Roned Realty of Union, Inc. for summary judgment as to all claims and cross-claims against them. The Court, having carefully reviewed the submissions of all parties regarding this motion, holds that Defendant's motion is **granted in part** and **denied in part**.

## BACKGROUND

The facts in this matter are extensive and thus, this Opinion shall only summarize the facts that are pertinent to the present motion. The Court presumes that all parties of record are familiar with the prior opinions in this matter, which discuss the factual background of this case in greater detail. *See Interfaith Community Organization v. AlliedSignal, Inc.,* 928 F.Supp. 1339 (D.N.J.1996) and *Interfaith Community Organization, et al. v. Honeywell International, Inc. et al.,* 188 F.Supp.2d 486 (D.N.J.2002).

### The Site (Study Area 7)

The site in question consists of three sites called the Roosevelt Drive–In Site, the Trader Horn Site and the Clean Machine Car Wash Site, collectively referred to as Study Area 7. *See* Rule 56.1 Statement of Undisputed Facts in Support of Roned Realty of Jersey City, Inc.'s and Roned Realty of Union, Inc.'s Motion for Summary Judgment ("Roned 56.1 Statement"), ¶ 1; Defendant Honeywell International Inc.'s Response to Rule 56.1 Statement of Undisputed Facts in Support of Roned Realty of Jersey City, Inc.'s and Roned Realty of Union, Inc.'s Motion for Summary Judgment (Honeywell's 56.1 Response"), ¶ 1. The present motion addresses a dispute concerning the Trader Horn Site, a 1.2 acre parcel of land located at 485 Route 440 that is adjacent to the Roosevelt Drive–In Site and the Clean Ma-

chine Car Wash Site. Roned 56.1 Statement, ¶¶ 2–3; Honeywell's 56.1 Response, ¶¶.2–3. The Roned Defendants have no connection to the Roosevelt Drive–In or Clean Machine Car Wash Sites. Roned 56.1 Statement, ¶ 21; Honeywell's 56.1 Response, ¶ 21.

Mutual Chemical Company of America ("Mutual") owned and operated a chromate chemical production facility (the "Facility") on West Side Avenue and Route 440 in Jersey City, New Jersey until 1954. This Facility extracted chromium from chromium ores to produce chromate chemicals. *Id.,* ¶ 46. The process generated chromium-bearing waste or chromium ore processing residue ("COPR") that Mutual transported through a pipeline onto Study Area 7. Roned 56.1 Statement, ¶ 4. In addition to the chromium-bearing waste, Mutual apparently dumped unknown amounts of other refuse at the Site. Additionally, Honeywell asserts that the State of New Jersey granted it riparian rights to deposit COPR in to the Hackensack River. Honeywell's 56.1 Response, ¶ 23.

### The Parties

This is an action brought by Plaintiffs Interfaith Community Organization ("Interfaith"), Lawrence Baker ("Baker"), Martha Webb Herring ("Herring"), Margaret Webb ("Webb"), Reverend Winston Clarke ("Clarke") and Margarita Navas ("Navas") (collectively the "Plaintiffs") against Defendants Honeywell International, Inc. ("Honeywell"), Roned Realty of Jersey City, Inc. ("Roned–JC") and Roned Realty of Union, Inc. ("Roned–Union") (together "the Roned Defendants") and W.R. Grace & Co. ("Grace–USA"), ECARG, Inc. ("ECARG") and W.R. Grace, Ltd. ("Grace England") (together "Grace Companies") (collectively the "Defendants") seeking declaratory and injunctive relief mandating the cleanup of environmental contamination at Study Area 7 (the "Site"). *Inter-*

*faith Community Organization et al. v. Honeywell International, Inc. et al.,* 188 F.Supp.2d 486, 489 (D.N.J.2002).

Interfaith is a not-for-profit corporation incorporated under the laws of the State of New Jersey. Amended Complaint, ¶ 19. Interfaith alleges its interest in chromium contamination in Hudson County and at the Site arose from its (1) inability to locate non-chromium contaminated land in Hudson County upon which it could construct six hundred units of affordable single-family housing and (2) the discovery that member churches were built on land contaminated with chromium. *Id.,* ¶¶ 20–21; Affidavit of Reverend Geoffrey Curtiss ("Curtiss Aff."), ¶¶ 4–5. The remaining individual Plaintiffs are members of Interfaith that reside and work in the vicinity of the Site, frequently drive by the Site and sometimes shop in stores near the Site. Amended Complaint, ¶ 23.

Honeywell is incorporated under the laws of the State of Delaware. *Id.,* ¶ 38. Mutual, a prior subsidiary of Honeywell, owned and operated a chromate chemical production facility across the street from the Site from approximately 1905 to 1954. *Id.* The Site was used during this time to dispose of COPR from the chromate plant. In 1954, Allied Chemical and Dye Corporation acquired Mutual and sold the Site to Amy Joy Realty Corporation for the construction of a drive-in movie theater. *Id.* Between March 1955 and 1999, Allied Chemical and Dye Corporation underwent corporate reorganization and eventually came to be known as Honeywell International, Inc. *See Interfaith Community Organization,* 188 F.Supp.2d at 490.

Grace–USA is a corporation formed under the laws of the State of Connecticut. *Amended Complaint,* ¶ 41. Grace–England is a direct subsidiary of Grace–USA with a registered office in London, England. *Id.* ECARG is a New Jersey corporation and a subsidiary of W.R. Grace & Co. *Id.* Grace–USA and Grace–England were the sole stockholders of Grace Retail Corporation ("Grace Retail"), which acquired two parcels of land constituting the largest portion of the Site (the Roosevelt Drive–In Site and the Clean Machine Car Wash). *Id.,* ¶ 42. In November 1986, the Channel Acquisition Company ("Channel") acquired Grace Retail and pursuant to a letter agreement, Grace Retail was to distribute some of its assets, including its portion of the Site, to Grace–USA and Grace–England. *Id.,* ¶ 43. This transfer, however, never occurred. *Id.* Nevertheless, Grace–USA and Grace–England were unaware that the transfer did not occur and acted as owners of the parcels until October 14, 1994. *Id.* On October 14, 1994, then-owner Channel conveyed the parcels to ECARG. *Id.,* ¶ 44.

Roned Realty of Jersey City, Inc. and Roned Realty of Union, Inc. are corporations incorporated under the laws of the State of New Jersey since 1979. *Id.,* ¶ 45; Declaration of Edward Navlen ("Navlen Decl."), ¶¶ 2–3. The Trader Horn Site is owned by Roned–JC as evidenced by quitclaim deed recorded on August 30, 1995. Fourth Declaration of Michael J. Caffrey, Exhibit 70; Roned 56.1 Statement, ¶ 15; Honeywell 56.1 Response, ¶ 15; Second Declaration of Edward Navlen, Exhibit A. Roned–Union never owned any portion of the Trader Horn Site. Roned 56.1 Statement, ¶ 15; Honeywell 56.1 Response, ¶ 15; Declaration of Edward Navlen ("Navlen Decl."), ¶¶ 6–7. At present, the Trader Horn Site is occupied by a retail store.

Each Roned entity was formed for the purposes of owning Trader Horn properties in particular locales. Roned–Union was formed to own properties in Union County, whereas Roned–JC was created to own properties in Jersey City, New Jersey. Navlen Decl., ¶ 5. The Roned Defen-

dants allege that they have taken no part in contaminating the Trader Horn Site.

### Potential Health Risks of Chromium

The chromium found at the Site is primarily trivalent and hexavalent chromium. Both forms raise environmental and human health concerns, but hexavalent chromium is the more toxic chromium compound. Airborne chromium and chromium compounds are categorized as carcinogenic by Environmental Protection Agency ("EPA") standards, but other organizations, such as the National Toxicity Institute, consider all compounds containing chromium to have carcinogenic potential. *See* Risk Assessment for Chromium Sites in Hudson County, New Jersey, 3–16, 3–17 (April 1989), attached as Exhibit 45 to Plaintiff's Memorandum in Opposition to [Honeywell International, Inc.]'s Motion to Dismiss Plaintiff's Amended Complaint and in Support of Plaintiff's Cross–Motion for Partial Summary Judgment on the Issue of Standing. Hexavalent chromium can also cause non-carcinogenic ailments by penetrating human skin to cause or exacerbate allergic and irritative effects on the respiratory system, kidneys, and skin. *Id.* at 3–5, 3–19, 3–20, 3–22.

### Procedural History

Plaintiffs filed a complaint (the "Complaint") on May 3, 1995. At a status conference held on July 27, 1995, Plaintiffs were granted leave to amend the Complaint. The Amended Complaint was filed on August 2, 1995.

In Count I of the Amended Complaint, Plaintiffs allege that Defendants violated section 7002(a)(1)(B) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), because the chromium-bearing waste at the Site presents an imminent and substantial endangerment to health or the environment. Amended Complaint, ¶¶ 71–74. The remaining counts of Plaintiff's Amended Complaint have been dismissed. *See In-*

*terfaith Community Organization v. AlliedSignal, Inc.*, 928 F.Supp. 1339, 1341, 1351, 1353 (D.N.J.1996).

On or about May 17, 1996, the Roned Defendants filed an answer to the Amended Complaint along with various cross-claims. On January 3, 1997, the Roned Defendants amended their cross-claims.

The Grace Defendants filed their Third Amended Cross–Claims on October 4, 2000 seeking relief under RCRA, CERCLA, the New Jersey Spill Compensation and Control Act and common law. The Grace Defendants cross-claim against the Roned Defendants was asserted in its original Answer and Cross–Claim and seeks contribution from the Roned Defendants under New Jersey law.

Honeywell has also asserted cross-claims against the Roned Defendants seeking injunctive relief under RCRA and declaratory relief and contribution under CERCLA, the New Jersey Spill Act, the New Jersey Joint Tortfeasors Contribution Law.

### DISCUSSION

### I. Summary Judgment Standard.

Summary judgment eliminates unfounded claims without recourse to a costly and lengthy trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P.* 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. A litigant may

discharge this burden by exposing "the absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. However, this effort requires more than "simply show[ing] that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In evaluating a summary judgment motion a court must view all evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587, 106 S.Ct. 1348; *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir.1999) (*citing Boyle v. County of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir.1998)); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). The Court's role is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue of fact for trial." *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Abraham*, 183 F.3d at 287.

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law determines which facts are material. *Id.* at 248, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* No issue for trial exists unless the non-moving party can demonstrate sufficient evidence favoring it, such that a reasonable jury could return a verdict in that party's favor. *See id.* at 249, 106 S.Ct. 2505.

## II. Roned Realty of Union, Inc.

A review of the submissions of counsel in connection with the present motion shows that Roned–Union does not have any connection or interest in the Trader Horn Site or Study Area 7 that would permit this Court to impose liability upon it for environmental harm. *See* Brief in Support of Roned Defendants' Motion for Summary Judgment On All Claims at 8–9; Plaintiff's Brief in Opposition to Roned Defendants' Motion for Summary Judgment on All Claims at 2–9 (focusing on Roned–JC); Brief of Defendant Honeywell International Inc. in Opposition to the Roned Defendants' Motion for Summary Judgment on All Claims at 1 (noting that Honeywell opposes the Roned Defendants' motion "only so far as it applies to defendant Roned Realty of Jersey City, Inc."). Accordingly, this Court holds that Roned–Union, as well as all claims and cross-claims against it, are **dismissed** as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure. The remaining issues discussed in this Opinion shall focus on the remaining Roned entity, Roned Realty of Jersey City, Inc.

## III. Interfaith's RCRA Claim Against Roned–JC.

Under RCRA, liability can be established by meeting the requirements of a four-part analysis that looks to whether Roned–JC; "(1) has contributed or is contributing to, (2) the past or present handling, storage, treatment, transportation, or disposal of, (3) any solid or hazardous waste that, (4) presents an imminent and substantial endangerment to health or the environment." *Interfaith Community Organization*, 188 F.Supp.2d at 502 (*citing* 42 U.S.C. § 6972(a)(1)(B) and 3 S. Cooke, The Law of Hazardous Waste, § 15.01[3][a] at 15–6 (2001)). For the purposes of this motion, the Court will assume that prong three of the above analysis is met; that is, that chromium, in some instances hexavalent chromium, contained in the chromium ore processing residue located on Study Area 7 is a form of solid or hazardous

waste as defined by RCRA. *See, e.g.; Interfaith Community Organization,* 188 F.Supp.2d at 502–03 (finding that chromium waste is a form of hazardous and solid waste under RCRA); *U.S. v. Power Engineering Co.,* 10 F.Supp.2d 1145, 1157–58 (D.Colo.1998), *affirmed* by 191 F.3d 1224, 1231 (10th Cir.1999), *cert. denied,* 529 U.S. 1086, 120 S.Ct. 1718, 146 L.Ed.2d 640 (2000) (finding that hexavalent chromium is clearly a form of hazardous waste and also a form of solid waste under RCRA and Colorado regulations); *Steel Manufacturers Ass'n v. E.P.A.,* 27 F.3d 642, 645 (D.C.Cir.1994) (electric arc furnace dust is considered to be a form of hazardous waste by the EPA because, in part, it contains hexavalent chromium); 40 C.F.R. § 261.24 (Under RCRA, the EPA has classified waste that contains five parts per million (ppm) or more of chromium as hazardous).

The "has contributed or is contributing to" the "past or present handling, storage, treatment, transportation, or disposal of" requirement under RCRA presents an interesting issue with regard to Roned–JC because all of the active dumping of COPR on the Site occurred many years prior to Roned–JC's assuming possession of the Trader Horn Site. Roned–JC argues that the mere fact that it is the record owner of the Trader Horn Site is insufficient to make it liable under RCRA because it never generated or transported any COPR onto the Trader Horn Site. Roned–JC further argues that upon taking possession of the site, it merely moved its business into the pre-existing commercial space, which was operated at the time as a men's clothing store. On this basis, Roned–JC argues that it could not have known that an environmental danger was created by the Trader Horn Site's contaminated condition. Navlen Decl. ¶¶ 7–9. In contrast, Plaintiff Interfaith contends that Roned–JC has contributed and is presently contributing to the handling, storage or disposal or hazardous chromium waste by its "studied indifference" to the Trader Horn Site's condition after learning of the environmental threat. Interfaith claims that Roned–JC should have taken specific measures to clean up the Trader Horn Site after learning that it was contaminated to abate the harm. Roned–JC responds that by permitting Honeywell to enter onto the Trader Horn Site and conduct remedial efforts, Roned, in effect, took such measures, and thus was not 'indifferent' to the Trader Horn Site's condition.

This Court agrees with Roned–JC that it has taken no active role in contributing to the contamination of the Trader Horn Site. However, RCRA is a comprehensive statutory scheme and as such, courts have imposed RCRA liability on parties that have contributed to the handling or disposal of hazardous waste by "passive inaction" or "studied indifference." *See U.S. v. Price,* 523 F.Supp. 1055, 1071 (D.N.J.1981), *affirmed,* 688 F.2d 204 (3d Cir.1982). In light of Congress' guiding instruction that RCRA's use of the phrase "contributing to" should be interpreted liberally, this Court adopts the reasoning in *Price* as persuasive and holds that passive inaction or studied indifference can create liability under RCRA. Furthermore, RCRA is not primarily targeted at punishing environmentally unsound acts, but rather at reducing "the generation of hazardous waste and ... ensur[ing] the proper treatment, storage and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 483, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996) (*citing* 42 U.S.C. § 6902(b)). As such, this Court finds Roned–JC's potential culpability to be irrelevant. The record is clear that Roned–JC is aware that COPR exists on

the Trader Horn Site and that the COPR may, in some form or fashion, be causing further damage to the land and surrounding environment. Accordingly, this Court finds that a genuine issue of material fact exists as to whether Roned–JC is contributing to the further contamination of the Trader Horn Site by permitting the chromium ore processing residue on the Trader Horn Site to continue harming the environment.

In light of this Court's finding that an issue of fact exists as to the 'contributing to' prong of the analysis for RCRA liability, this Court need not proceed further and discuss the remaining portions of the conjunctive RCRA analysis. However, this Court will note that as similarly discussed in this Court's March 12, 2002 Opinion, a genuine dispute of material fact exists as to whether any of the chromium residue on the Trader Horn Site is being released and causing an "imminent and substantial endangerment to health or the environment." *See Interfaith Community Organization*, 188 F.Supp.2d at 503–04; 42 U.S.C. § 6972(a)(1)(B). Accordingly, Roned–JC's motion for summary judgment of Plaintiffs' RCRA claim (Complaint Count I) is **denied.**

## IV. Honeywell's Cross–Claims Against Roned–JC.

Defendant Honeywell has asserted five cross-claims against the Grace Defendants and the Roned Defendants. *See* Honeywell's Second Amended Cross–Claims, ¶¶ 33–73. This section of the Court's Opinion will address each of Honeywell's cross-claims as they apply to Roned–JC.

### A. Honeywell's cross-claim under RCRA.

Count Five of Defendant Honeywell's Second Amended Cross–Claims seeks injunctive relief under RCRA against Roned–JC for contributing to the past or present storage or disposal of hazard-ous/solid waste by "failing to exercise due care in handling, storing, transporting, treating, and for disposal of waste containing chromium at the Site and refusing to assist in and intentionally interfering with Honeywell's investigation and remediation of waste containing chromium at the [Trader Horn] Site." Honeywell's Second Amended Cross–Claims, ¶ 72. In relief, Honeywell seeks attorneys' fees, interest and an injunction directing Roned–JC to abate the environmental harm created by the Trader Horn Site's contamination. For the reasons stated in Part III of this Opinion, *supra*, Roned–JC's motion for summary judgment as to Honeywell's RCRA claim is denied.

### B. Honeywell's contribution cross-claim under CERCLA.

Honeywell generally denies that it is liable to Interfaith under RCRA, but insofar as Honeywell might possibly be found liable to Interfaith, Honeywell has sought contribution from the remaining defendants. Count One of Honeywell's Second Amended Cross–Claims seeks contribution under section 113(f) of CERCLA. In relief, Honeywell, seeks all past and future response costs, attorneys' fees and interest.

The Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") was enacted in 1980 to eliminate unsafe hazardous waste sites. *See* H.R.Rep. No. 1016, Part I, 96th Cong., 2d Sess. 1, 17–22, *reprinted in* 1980 U.S.Code Cong. & Admin. News 6119, 6119–25. "Amended in 1986 by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. No. 99–499, 1986 U.S.Code Cong. & Admin. News (100 Stat.) 1613, CERCLA authorizes the [Environmental Protection Agency ("EPA")] to clean up hazardous waste sites itself and creates a 'Superfund' " to pay for the EPA's activities. *United States v. Aceto Agricultural Chemicals Corp.*, 872 F.2d

1373, 1377 (8th Cir.1989); 26 U.S.C. § 9507; 42 U.S.C. §§ 9604–05. The 1986 SARA amendments to CERCLA also added section 113(f), which permits private parties to file contribution suits under CERCLA.. *See also Key Tronic Corp. v. United States,* 511 U.S. 809, 816, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994).

■ Section 113(f) of CERCLA provides as follows:

(1) Contribution

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

(2) Settlement

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

(3) Persons not party to settlement

(A) If the United States or a State has obtained less than complete relief from a person who has resolved its liability to the United States or the State in an administrative or judicially approved settlement, the United States or the State may bring an action against any person who has not so resolved its liability.

(B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).

(C) In any action under this paragraph, the rights of any person who has resolved its liability to the United States or a State shall be subordinate to the rights of the United States or the State. Any contribution action brought under this paragraph shall be governed by Federal law.

42 U.S.C. § 9613(f). As described, section 113(f) permits private parties, such as Honeywell, to recover its response costs in contribution from any other 'person' that is liable or potentially liable for contaminating an applicable site under section 107(a) of CERCLA. Through a contribution suit, a potentially responsible party who has incurred expenditures in remedial efforts at an applicable site may recover any response cost that exceeds its equitable share under the circumstances. *New Jersey Turnpike Authority,* 197 F.3d at 104.

■ A section 113(f) contribution analysis begins with an assessment whether a particular person or entity falls within the ambit of CERCLA's "central liability provision," section 107(a). 3 S. Cooke, The Law of Hazardous Waste, § 16.01[2] at 16–4 (2001); 42 U.S.C. § 9607(a). The four categories of potentially liable parties are:

(1) the *owner and operator* of a vessel or a facility [where hazardous substances are or may be released],

(2) *any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,*

(3) any person who by contract, agreement, or otherwise *arranged* for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances [where such hazardous substances are or may be released], and

(4) any person who accepts or accepted any hazardous substances for *transport* to disposal or treatment facilities, incineration vessels or sites [where hazardous substances are or may be released].

42 U.S.C. § 9607(a) (emphasis added). If a person or entity falls within one of these four "covered person" categories, then they are subject to liability under CERCLA. Aside from the covered person requirement, a party seeking to establish CERCLA liability must also show that the site in question is a "facility" from which a release or threatened release of a hazardous substance causes a party to incur response costs to remediate the potential environmental harm. 42 U.S.C. § 9607(a); *New Jersey Turnpike Authority v. PPG Industries, Inc.,* 197 F.3d 96, 103 (3d Cir. 1999); *United States v. CDMG Realty Co.,* 96 F.3d 706, 712 (3d Cir.1996); *SC Holdings, Inc. v. A.A.A. Realty, Co.,* 935

F.Supp. 1354, 1361 (D.N.J.1996). CERCLA imposes strict, joint and several liability upon responsible parties. *New Jersey Turnpike Authority,* 197 F.3d at 104.

Turning first to the 'facility' requirement, Section 101(9) of CERCLA defines the term "facility" as:

(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or

(B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

42 U.S.C. § 9601(9). Under this very broad definition, Study Area 7 constitutes a facility for the purposes of a CERCLA analysis because it is a "site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." *Id.*

Turning to the remaining requirements, Honeywell has incurred response costs. With regard to the "covered person" and "release or threatened release" requirement, this Court finds that a question of material fact exists as to these two prongs of the CERCLA analysis. Roned–JC is certainly the present owner of the Trader Horn Site. However, it is not clear, as a matter of law, that there is a present release or threatened release of a hazardous substance at the Trader Horn Site.

Because these threshold questions of liability are in dispute, Roned–JC's motion for summary judgment on count one of Honeywell's Second Amended Cross–Claims is **denied.**[1]

**1.** Roned–JC also argued in its submissions to the Court that it is entitled to an innocent owner defense under CERCLA. This Court

opts to not render a decision on this point as a matter of law and instead, will permit the

### C. Honeywell's contribution cross-claim under the New Jersey Spill Act.

Count two of Honeywell's Second Amended Cross–Claims assert a contribution claim under the New Jersey Spill Compensation and Control Act, N.J. Stat. Ann. §§ 58:10–23.11 through 58:10–23.24. The Spill Act is a CERCLA-like environmental statute that provides that:

Any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred. Such person shall also be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs incurred ...

N.J. Stat. Ann. §§ 58:10–23.11g(c)(1). The Spill Act's contribution provision, provides in pertinent part:

Whenever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance. In an action for contribution, the contribution plaintiffs need prove only that a discharge occurred for which the contribution defendant or defendants are liable pursuant to the provisions of subsection c. of section 8 of P.L.1976, c. 141 (C.58:10–23.11g), and the contribution defendant shall have only the defenses to liability available to parties pursuant to subsection d. of section 8 of P.L.1976, c. 141 (C.58:10–23.11g). In resolving contribution claims, a court may allocate the costs of cleanup and removal among liable parties using such equitable factors as the court determines are appropriate.

N.J. Stat. Ann. § 58:10–23.11f(a)(2). To add a further dimension to this analysis, N.J. Stat. Ann. § 58:10–23.11g(c)(3) provides that:

In addition to the persons liable pursuant to this subsection, any person who owns real property acquired on or after September 14, 1993 on which there has been a discharge prior to the person's acquisition of that property and who knew or should have known that a hazardous substance had been discharged at the real property, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred. Such person shall also be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs incurred by the department or a local unit pursuant to subsection b. of section 7 of P.L.1976, c. 141 (C.58:10–23.11f). Nothing in this paragraph shall be construed to alter liability of any person who acquired real property prior to September 14, 1993.

N.J. Stat. Ann. § 58:10–23.11g(c)(3).

Roned–JC is the owner of the Trader Horn Site as evidenced by a 1995 deed. However, Roned–JC maintains that it has actually owned the Trader Horn site since 1979 and that the 1995 deed was recorded to correct prior errors in the recording process. Honeywell argues that this factual dispute over the applicability of N.J. Stat. Ann. § 58:10–23.11g(c)(3) necessitates the denial of Roned–JC's motion. See Second Declaration of Edward Navlen, ¶¶ 3–4, Exhibit A; Fourth Declaration of Michael J. Caffrey, ¶¶ 3–4, Exhibits 70, 71.

availability of this defense to remain a question for trial.

Honeywell also argues that Roned–JC, as the owner of the Trader Horn Site is a "person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance." A "person" under the Spill Act includes:

public or private corporations, companies, associations, societies, firms, partnerships, joint stock companies, as well as individuals, and when used to designate the owner of property which may be subject to this chapter, includes this State, the United States, any other state of the United States, and any foreign country or government, and any political subdivisions or agents, lawfully owning or possessing property in this State.

N.J.A.C. § 7:1E–1.6. Moreover, a "person responsible for a discharge" includes:

1. Any person whose act or omission results or has resulted in a discharge;
2. Each owner or operator of any facility, vehicle or vessel from which a discharge has occurred;
3. Any person who owns or controls any hazardous substance which is discharged;
4. Any person who has directly or indirectly caused a discharge;
5. Any person who has allowed a discharge to occur; or
6. Any person who brokers, generates or transports the hazardous substance discharged.

N.J.A.C. § 7:1E–1.6. In addition, a "discharge" is defined as:

any intentional or unintentional action or omission, unless pursuant to and in compliance with the conditions of a valid and effective Federal or State permit, resulting in the releasing, spilling, pumping, pouring, emitting, emptying or dumping of a hazardous substance into the waters or onto the lands of the State, or into waters outside the jurisdiction of the State when damage may result to the lands, waters or natural resources within

the jurisdiction of the State. This term does not include "leak."

N.J.A.C. § 7:1E–1.6. Finally, a hazardous substance includes all substances listed in Appendix A to N.J.A.C. § 7:1E–1.7, which includes chromium and all chromium compounds.

■ These definitions, interpreted liberally, would appear to permit a finding of liability against Roned–JC. However, the New Jersey Superior Court, Appellate Division recently addressed the question of what constitutes a "discharge" and a "person responsible for a discharge" under the New Jersey Spill Act in *White Oak Funding, Inc. v. Winning*, 341 N.J.Super. 294, 775 A.2d 222 (App.Div.), *certif. denied*, 170 N.J. 209, 785 A.2d 437 (2001). In *White Oak Funding, Inc.*, the Court pointed out that a discharge "requires some act of omission of human conduct which causes a hazardous material not previously present to enter the waters or land." *White Oak Funding, Inc.*, 341 N.J.Super. at 299, 775 A.2d 222 (*citing Atlantic City Municipal Utilities Authority v. Hunt*, 210 N.J.Super. 76, 99–100, 509 A.2d 225 (App.Div. 1986)). The Appellate Division further pointed out that "[l]iability does not result from passive migration of a hazardous material that previously entered the site" *Id.* This last quote appears to describe Roned–JC's relationship to the potential harm at the Trader Horn Site. Said differently, if Roned–JC is found responsible for any contamination at the Trader Horn site, such contamination could only result from Roned's passive inaction (i.e., failure to assist in remediating the harm). While passive behavior can possibly support a finding of liability under federal law, the N.J. Spill Act only imposes liability on non-passive dischargers. Accordingly, the decision in *White Oak Funding, Inc.* convinces this Court that Roned–JC's motion for summary judgment as to Count Two of Honeywell's Second Amended Cross–Claims should be granted.

#### D. Honeywell's cross-claim for relief under New Jersey's Joint Tortfeasors Contribution Law.

Count Three of Honeywell's Second Amended Cross–Claims seeks contribution under the New Jersey Joint Tortfeasors Contribution Law, N.J. Stat. Ann. § 2A:53A. As noted in the New Jersey Spill Act, "[n]othing ... [under the New Jersey Spill Act's contribution provisions] shall affect the right of any party to seek contribution pursuant to any other statute or under common law." N.J. Stat. Ann. § 58:10–23.11f(a)(2). However, in light of this Court's holding that Roned–JC is entitled to summary judgment as to Honeywell's substantive cross-claim under New Jersey law (the N.J. Spill Act), this Court holds that Honeywell's claim for contribution under the New Jersey Joint Tortfeasors Contribution Law should also be dismissed. Accordingly, this Court finds that Roned–JC's motion for summary judgment on count three of Honeywell's Second Amended Cross–Claims is also **granted.**

#### E. Honeywell's cross-claim for declaratory relief under New Jersey's Uniform Declaratory Judgment Law, CERCLA and the Federal Declaratory Judgment Act.

Count four of Honeywell's Second Amended Cross–Claims asserts a right to declaratory judgment under CERCLA, 42 U.S.C. § 9613(g), the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the New Jersey Uniform Declaratory Judgment Law, N.J. Stat. Ann. § 2A:15–50. As discussed throughout this Opinion, Roned–JC and Honeywell are each involved in an actual controversy against each other and the other parties to this litigation. Additionally, Honeywell has shown that its cross-claim against Roned–JC under CERCLA has sufficient merit to survive a motion for summary judgment. Honeywell is under a present obligation to fully remediate the contaminated condition of Study Area 7 and through this litigation, seeks to establish whether it has or has not sufficiently done so. Taking all of these factors into consideration, Honeywell could potentially be entitled to a declaratory judgment by this Court to help define the rights and responsibilities of each of the parties and eventually reach a final resolution to this matter should it proceed to judgment. However, if a declaratory judgment were necessary in this matter, it can only arise under the Federal Declaratory Judgment Act and/or CERCLA. Honeywell is not entitled to seek declaratory judgment under the New Jersey Uniform Declaratory Judgment Law because Honeywell's substantive state cross-claim against Roned–JC is dismissed. As a result, Roned–JC's motion for summary judgment on this count is **denied** as to the Federal Declaratory Judgment Act and **granted** as to the New Jersey Uniform Declaratory Judgment Law.

### V. The Grace Defendants Cross–Claim Pursuant to the New Jersey Joint Tortfeasors Contribution Law Against the Roned Defendants.

Insofar as the Grace Defendants may be held liable in this matter, the Grace Defendants have asserted a cross-claim for contribution "pursuant to the statutory contribution laws of the State of New Jersey." *See* Answer and Cross–Claims of Defendants W.R. Grace & Co.-Conn., W.R. Grace, Ltd. and ECARG, Inc. at 10; *see also* A0382.[2] As pointed out by the Roned

---

**2.** As part of some of the numerous motions filed in this matter, the Grace Defendants have submitted a four-volume, one thousand nine hundred and sixty-three page Appendix in support of all of its motions. Citations to this Appendix will be formatted as "A[page

Defendants, this cross-claim appears to invoke the New Jersey Joint Tortfeasors Contribution Law, N.J. Stat. Ann. § 2A:53A–3 *et seq.* It is noteworthy to mention that while this cross-claim was asserted by the Grace Defendants in its original answer and cross-claim, the Grace Defendants did not renew this cross-claim in any of its three subsequent amended cross-claims. In any case, a review of the record shows that while the Grace Defendants possessed an interest in the Roosevelt Drive–In Site and the Clean Machine Car Wash, they never owned an interest in the Trader Horn Site. *See* Brief In Support of Roned Defendants' Motion for Summary Judgment on All Claims at 22; Fourth Declaration of Michael J. Caffrey, Exhibit 70; Roned 56.1 Statement, ¶ 15; Honeywell 56.1 Response, ¶ 15; Second Declaration of Edward Navlen, Exhibit A; Amended Complaint, ¶ 42. Roned–JC, on the other hand, only possesses an interest in the Trader Horn Site and has never possessed an interest in the Roosevelt Drive–In Site or the Clean Machine Car Wash. Accordingly, this Court holds that Roned–JC's motion for summary judgment of the Grace Defendant's cross-claim for contribution is **granted.**

## CONCLUSION

For the foregoing reasons, the Roned Defendants' motion is **granted in part** and **denied in part.** Specifically, Roned–Union's motion for summary judgment is **granted** and thus Roned–Union is **dismissed** from this case. Roned–JC's motion for summary judgment as to Count One of Interfaith's complaint is **denied.** Roned–JC's motion for summary judgment of Honeywell's Second Amended Cross-Claims is **denied** as to Counts One and Five, **granted** as to Counts Two and Three, and **granted in part** and **denied in part** as to Count Four. Roned–JC's motion

number]" (i.e., page 300 of the Appendix

for summary judgment as to the Grace Defendant's cross-claim for contribution is **granted.** An Order accompanies this Opinion.

## ORDER

This matter having come before the Court on motion by Defendants Roned Realty of Jersey City, Inc. and Roned Realty of Union, Inc. for summary judgment [Docket Entry 194–1] as to all claims and cross-claims against them; and the Court having reviewed the submissions in support of and in opposition to the motion; and for the reasons discussed in the Opinion of this Court filed this day; and for good cause shown,

IT IS ON THIS 13th DAY OF JUNE 2002;

**ORDERED** that the Roned Realty of Union, Inc.'s motion for summary judgment of all claims and cross-claims against it is **granted;** and it is further

**ORDERED** that Roned Realty of Union, Inc. is **dismissed** from this case; and it is further

**ORDERED** that Roned Realty of Jersey City, Inc.'s motion for summary judgment of Count One of Plaintiffs' Complaint by Interfaith Community Organization, Lawrence Baker, Martha Webb Herring, Margaret Webb, Reverend Winston Clarke and Margarita Navas is **denied;** and it is further

**ORDERED** that Roned Realty of Jersey City, Inc.'s motion for summary judgment as to Counts One and Five of Defendant Honeywell International Inc.'s cross-claims is **denied;** and it is further

**ORDERED** that Roned Realty of Jersey City, Inc.'s motion for summary judgment as to Counts Two and Three of De-

would be cited as A300).

fendant Honeywell International Inc.'s cross-claims is **granted**; and it is further

**ORDERED** that Roned Realty of Jersey City, Inc.'s motion for summary judgment as to Counts Four of Honeywell International Inc.'s cross-claims is **denied** as to the Federal Declaratory Judgment Act and CERCLA and **granted** as to the New Jersey Uniform Declaratory Judgment Law; and it is further.

**ORDERED** that Roned Realty of Jersey City, Inc.'s motion for summary judgment as to W.R. Grace & Company, ECARG, Inc. and W.R. Grace, Ltd.'s cross-claim for contribution is **granted**.