INTERFAITH COMMUNITY ORGANIZATION; Lawrence Baker; Martha Webb Herring; Margaret Webb; Reverend Winston Clarke; Margarita Navas; Hackensack Riverkeeper, Inc., consolidated Plaintiff; William Sheehan, consolidated Plaintiff, Plaintiffs,

v.

HONEYWELL INTERNATIONAL, INC.; W.R. Grace & Company; Ecarg, Inc.; W.R. Grace, Ltd.; Roned Realty of Jersey City, Inc.; Roned Realty of Union, Inc., Defendants.

Civil Action No. 95–2097DMC.

United States District Court, D. New Jersey.

July 26, 2002.

David W. Field, Michael J. Caffrey, James Stewart, Lowenstein Sandler, PC, Roseland, NJ, for Honeywell International, Inc.

Carolyn Smith Pravlick, Steven J. German, Damian A. Schane, Kathleen L. Millian, Terris, Pravlick & Millian, LLP, Washington, DC, and Edward Lloyd, New York, NY, for Interfaith Community Organization, Lawrence Baker, Martha Webb Herring, Margaret Webb, Winston Clarke, Rev., Margarita Navas and Hackensack Riverkeeper, Inc. and William Sheehan.

William F. Mueller, Clemente, Mueller & Tobia, PA, Morristown, NJ, for Roned Realty of Jersey City, Inc. and Roned Realty of Union City, Inc.

Christopher H. Marraro, William Hughes, Angela Pelletier, Wallace King Marraro & Branson, PLLC, Washington, DC, and John Michael Agnello, Melissa E. Flax, Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, Roseland, NJ, for W.R. Grace & Company, Ecarg, Inc., W.R. Grace, Ltd.

## OPINION

CAVANAUGH, District Judge.

Before the Court are several motions that shall be addressed in this Opinion. First, Defendants W.R. Grace & Company and W.R. Grace, Ltd. have moved for summary judgment as to all cross-claims asserted against them by Defendant Honeywell International, Inc. Second, W.R. Grace & Co. has moved for summary judgment on Counts Two and Twelve of its Third Amended Cross–Claims against Honeywell International, Inc. Third, Honeywell International, Inc. has cross-moved against W.R. Grace & Co. to have Counts Two and Twelve of W.R. Grace & Co.'s Third Amended Cross–Claims dismissed. Fourth, Ecarg, Inc. has moved for partial summary judgment on Counts Three and Twelve of its Third Amended Cross–Claims against Honeywell. Fifth, Honeywell has also cross-moved against Ecarg, Inc. to dismiss Counts Three and Twelve of Ecarg, Inc.'s Third Amended Cross Claims. Sixth, the Grace Defendants have moved for summary judgment on Count Five of its Third Amended Cross–Claims. Seventh, Honeywell International, Inc. has filed a motion for summary judgment seeking to dismiss the Grace Defendants Third Amended Cross–Claims. Eighth, Ecarg, Inc. seeks to have this Court apply a portion of its June 13, 2002 Opinion as law of the case to dismiss certain cross-claims by Honeywell International, Inc. against Ecarg, Inc. Ninth, Honeywell International, Inc. has requested that this Court reconsider its June 13, 2002 Opinion in part. Tenth, consolidated plaintiffs William Sheehan and Hackensack Riverkeeper, Inc. have moved for a stay of any further proceedings in the consolidated *Hackensack Riverkeeper, Inc. et al. v. Honeywell Int'l, Inc. et al.*, Civil Action No. 00–1451(DMC), to which Honeywell International, Inc. responds by cross-moving for dismissal or in the alternative, additional discovery.

For the reasons stated in this Opinion, the Court holds that Defendants W.R. Grace & Co. and W.R. Grace, Ltd.'s motion for partial summary judgment as to Honeywell International, Inc.'s cross-claims is **granted**. W.R. Grace & Co.'s motion for partial summary judgment and Honeywell's cross-motion regarding Counts Two and Twelve of the Grace Defendants' Third Amended Cross–Claims are **denied**. Ecarg, Inc.'s motion for partial summary judgment and Honeywell's cross-motion regarding Counts Three and Twelve of the Grace Defendants' Third Amended Cross–Claims are **denied**. The Grace Defendants' motion for partial summary judgment on Count Five of its Third Amended Cross–Claims is **denied**. Honeywell International, Inc.'s motion for summary judgment is **granted in part** and **denied in part**. Ecarg's application to have this Court apply its June 13, 2002 reasoning to dismiss certain crossclaims against Ecarg, Inc. is **denied**. Honeywell's request that this Court reconsider its June 13, 2002 Opinion in part is **granted** and upon reconsideration, this Court reverses itself in part. Hackensack Riverkeeper, Inc. and William Sheehan's motion for a stay of any further proceedings in *Hackensack Riverkeeper, Inc. et al. v. Honeywell Int'l, Inc. et al.*, Civil Action No. 00–1451(DMC) is **granted**. Honeywell International, Inc.'s cross-motion for dismissal of the Hackensack Riverkeeper matter and in the alternative, for additional discovery, is **denied**.

## BACKGROUND

The facts in this matter are extensive and thus, this Opinion will only summarize the facts that are pertinent to the presently pending motions. The Court presumes that all parties of record are familiar with

the prior opinions in this matter. *See Interfaith Cmty. Org. v. Alliedsignal, Inc.,* 928 F.Supp. 1339 (D.N.J.1996); *Interfaith Cmty. Org. et al. v. Honeywell Int'l, Inc. et al.,* 188 F.Supp.2d 486 (D.N.J.2002); *Interfaith Cmty. Org. et al. v. Honeywell Int'l, Inc. et al.,* 204 F.Supp.2d 804 (D.N.J.2002), *also available at* 2002 WL 1301351 (D.N.J. 2002).

### The Site (Study Area 7)

The Site[1] in question consists of three parcels of land known as the Roosevelt Drive In Site, the Trader Horn Site and the Clean Machine Car Wash Site, collectively referred to as Study Area 7. The present motions address the Roosevelt Drive In Site and Clean Machine Car Wash Site, both owned at present by Ecarg, Inc.[2] None of the three Grace entities in this case are connected to the Trader Horn Site, presently owned by Roned Realty of Jersey City, Inc.

Mutual Chemical Company of America ("Mutual") is a chromate chemical processing company that was originally formed in 1827 and expanded into Jersey City, New Jersey in or about 1905. Second Declaration of Michael J. Caffrey, Ex. 38 at 287. Mutual owned and operated a chromate chemical production facility (the "Facility") on West Side Avenue and Route 440 in Jersey City, New Jersey until 1954. This Facility extracted chromium from chromium ores to produce chromate chemicals. Plaintiffs' Amended Complaint ("Amended Compl."), ¶ 46. The process generated chromium-bearing waste or chromium ore processing residue ("COPR") that Mutual transported through a pipeline onto Study Area 7.

### The Parties

This is an action brought by Plaintiffs Interfaith Community Organization ("Interfaith"), Lawrence Baker ("Baker"), Martha Webb Herring ("Herring"), Margaret Webb ("Webb"), Reverend Winston Clarke ("Clarke") and Margarita Navas ("Navas") (collectively the "Plaintiffs") against Defendants Honeywell International, Inc. ("Honeywell"), Roned Realty of Jersey City, Inc. ("Roned–JC") and Roned Realty of Union, Inc. ("Roned Union")[3] (together "the Roned Defendants") and W.R. Grace & Co. ("Grace–USA")[4], Ecarg, Inc. ("Ecarg") and W.R. Grace, Ltd. ("Grace–England")[5] (together "the Grace Defendants") (collectively the "Defendants") seeking declaratory and injunctive relief mandating the cleanup of environmental contamination at Study Area 7 (the "Site"). *Interfaith Cmty. Org. et al. v. Honeywell Int'l, Inc. et al.,* 188 F.Supp.2d 486, 489 (D.N.J.2002). Interfaith's complaint prompted Honeywell and the Grace Defendants to file various cross-claims against each other. The majority of the motions discussed in this Opinion pertain to these cross-claims.

---

1. Because this Opinion mainly concerns the Roosevelt Drive In Site and the Clean Machine Car Wash Site, this Opinion shall collectively refer to these two parcels of land as the "Site" for the remainder of this Opinion.

2. While Ecarg, Inc. is one of three Grace entities that have been named as defendants in this action, Ecarg, Inc. has not joined in this present motion for summary judgment by W.R. Grace & Company and W.R. Grace Ltd.

3. Roned Union was dismissed from this matter on June 13, 2002 by this Court.

4. W.R. Grace & Co. changed its name to W.R. Grace & Co.-Conn. in 1988. For the sake of convenience, however, this Court will continue to refer to W.R. Grace & Co.-Conn. as Grace USA. *See* McFarland Decl., ¶ 2.

5. In 1998, W.R. Grace, Ltd. changed its name to Chasmbridge Ltd. For the sake of convenience, however, this Court will continue to refer to this entity as Grace–England. *See* McFarland Decl., ¶ 2.

Interfaith is a not-for-profit corporation incorporated under the laws of the State of New Jersey. Amended Compl., ¶ 19. The remaining individual Plaintiffs Baker, Herring, Webb, Clarke and Navas are concerned citizens living near Study Area 7. Plaintiffs are not directly involved in the present motions.

On September 4, 2001, *Hackensack Riverkeeper, Inc. et al. v. Honeywell Int'l et al.*, Civil Action No. 00–1451(DMC) was consolidated with the present matter. Consolidated Plaintiff Hackensack Riverkeeper, Inc. ("Hackensack Riverkeeper") is a not-for-profit public interest corporation formed under the laws of New Jersey in 1997. *Hackensack Riverkeeper, et al. v. Honeywell et al.*, Civil Action No. 00–1451(DMC), Second Amended Complaint ("Consolidated Plaintiffs' Compl."), ¶ 28. Hackensack Riverkeeper's purpose is to protect, preserve and restore the Hackensack River and its living resources and to increase public awareness of the lower Hackensack River watershed's viability as a natural and recreational resource. Consolidated Plaintiffs' Compl., ¶ 29. Hackensack Riverkeeper operates various ecological and recreational programs and activities on, around, and in connection with the Hackensack River. *Id.*, ¶¶ 30–31. Study Area 7's COPR contamination, which Hackensack Riverkeeper maintains is also polluting the Hackensack River, adversely impacts on Hackensack Riverkeeper's ability to operate these activities and spread awareness of the Hackensack River's viability as a natural resource. *Id.*, ¶ 32. Consolidated plaintiff William Sheehan ("Sheehan") is an employee of Hackensack Riverkeeper and a recreational user of the Hackensack River. *Id.*, ¶¶ 33, 34.

Roned Realty of Jersey City, Inc. is a corporation formed under the laws of the State of New Jersey since 1979 and present owner of the Trader Horn Site. Amended Compl., ¶ 45; Declaration of Edward Navlen ("Navlen Decl."), ¶¶ 2–3; Fourth Declaration of Michael J. Caffrey, Exhibit 70; Second Declaration of Edward Navlen, Exhibit A. Roned–JC is not directly involved in the presently pending motions.

Honeywell is incorporated under the laws of the State of Delaware. Amended Compl., ¶ 38. Mutual, a prior subsidiary of Honeywell, owned and operated a chromate chemical production facility across the street from the Site from approximately 1905 to 1954. *Id.* The Site was used during this time to dispose of COPR from the chromate plant. In 1954, Allied Chemical and Dye Corporation acquired Mutual and sold the Site to Amy Joy Realty Corporation for the construction of a drive-in movie theater. *Id.* The drive-in was completed in 1955. *Id.* In 1965, Amy Joy Realty Corporation subdivided the Site and leased a portion to Goodrich Associates for the construction of a commercial building. Diana Stores Corporation later joined this sublease. In preparing for construction in 1965, COPR was discovered on the Site. Diana Stores Corporation merged into Daylin, Inc. in 1969. Daylin, in turn, was acquired in 1979 by Grace–USA and Grace–England. McFarland Decl., ¶ 3. Grace–USA is a corporation formed under the laws of the State of Connecticut. Amended Compl., ¶ 41. Grace–England is a direct subsidiary of Grace–USA with a registered office in London, England. *Id.*

In 1981, Daylin, Inc. ("Daylin") acquired two parcels of land constituting the largest portion of the Study Area 7 (the Roosevelt Drive In Site and the Clean Machine Car Wash) (the "Site"). *Id.*, ¶ 42; 56.1 Statement of Undisputed Facts in Support of W.R. Grace & Co.'s and W.R. Grace Ltd.'s motion for Summary Judgment on all Claims Asserted by Honeywell Interna-

tional, Inc. ("Grace's 56.1 Statement"), ¶ 1. At that time, Grace–USA and Grace England were the sole stockholders of Daylin. In 1982, Daylin changed its name to the Grace Retail Corporation. McFarland Decl., ¶ 6. In November 1986, the Channel Acquisition Company ("Channel") acquired Grace Retail/Daylin and pursuant to a letter agreement, Grace Retail was to distribute some of its assets, including its portion of the Site, to Ecarg, Inc., a New Jersey corporation and a subsidiary of W.R. Grace & Co. formed in 1975, that presently holds formal title to the Roosevelt Drive In and Clean Machine Car Wash sites. Amended Compl., ¶¶ 41–43; Declaration of Akos L. Nagy, ¶ 1; Grace 56.1 Statement, ¶ 3; Defendant Honeywell International Inc.'s Response to the Statement of Material Uncontroverted Facts of W.R. Grace & Co. and W.R. Grace Ltd. Regarding Their Motion for Summary Judgment on the Amended Cross–Claims of Honeywell ("Honeywell's 56.1 Response"), ¶ 3; Declaration of John A. McFarland ("McFarland Decl."), ¶ 8. It is undisputed that Grace–England never owned or operated the Site. Grace's 56.1 Statement, ¶ 4; Honeywell's 56.1 Response, ¶ 4; McFarland Decl., ¶ 12. Honeywell does assert, however, that while Grace–USA never formally held title to the site in question, it did act as an owner or operator along with Ecarg.

*Potential Health Risks of Chromium*

The chromium found at the Site is primarily trivalent and hexavalent chromium. Both forms raise environmental and human health concerns, but hexavalent chromium is the more toxic chromium compound. Airborne chromium and chromium compounds are categorized as carcinogenic by Environmental Protection Agency ("EPA") standards, but other organizations, such as the National Toxicity Institute, consider all compounds containing chromium to have carcinogenic potential. *See* Risk Assessment for Chromium Sites in Hudson County, New Jersey, 3–16, 3–17

(April 1989). Hexavalent chromium can also cause non-carcinogenic ailments by penetrating human skin to cause or exacerbate allergic and irritative effects on the respiratory system, kidneys, and skin. *Id.* at 3–5, 3–19, 3–20, 3–22.

*The Complaint and Cross–Complaints*

Plaintiffs filed their Complaint on May 3, 1995. The Complaint was amended on August 2, 1995. In Count I of the Amended Complaint, Plaintiffs allege Defendants violated section 7002(a)(1)(B) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), because the chromium-bearing waste at the Site presents an imminent and substantial endangerment to health or the environment. Amended Compl., ¶¶ 71–74. The remaining counts of Plaintiff's Amended Complaint have been dismissed. *See Interfaith Cmty. Org. v. AlliedSignal, Inc.,* 928 F.Supp. 1339, 1341, 1351, 1353 (D.N.J. 1996).

On or about May 17, 1996, the Roned Defendants filed an answer to the Amended Complaint along with various cross-claims. On January 3, 1997, the Roned Defendants amended their cross-claims.

The Grace Defendants filed their Third Amended Cross–Claims on October 4, 2000, seeking relief under RCRA, CERCLA, the New Jersey Spill Compensation and Control Act and common law. Honeywell has also asserted cross-claims against the Roned Defendants seeking injunctive relief under RCRA, contribution under CERCLA, the New Jersey Spill Act, and the New Jersey Joint Tortfeasors Contribution Law, and declaratory relief.

In the consolidated matter (Civil Action No. 00–1451), Hackensack Riverkeeper and Sheehan filed a Second Amended Complaint on March 28, 2002 against Honeywell, Roned–JC, Grace–England, Grace–USA and Ecarg asserting violations of RCRA (Counts One and Two) and the

Federal Water Pollution Control Act (Count Three). This amended filing prompted an exchange of amended cross-claims amongst the Defendants similar to those filed in the present matter.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD.

Summary judgment eliminates unfounded claims without recourse to a costly and lengthy trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P.* 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. A litigant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. However, this effort requires more than "simply show[ing] that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In evaluating a summary judgment motion a court must view all evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587, 106 S.Ct. 1348; *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir.1999) (*citing Boyle v. County of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir.1998)); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). The Court's role is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue of fact for trial." *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Abraham*, 183 F.3d at 287.

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law determines which facts are material. *Id.* at 248, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* No issue for trial exists unless the non-moving party can demonstrate sufficient evidence favoring it, such that a reasonable jury could return a verdict in that party's favor. *See id.* at 249, 106 S.Ct. 2505.

### II. THE SUBSTANTIVE LAW UNDERLYING THE PRESENT MOTIONS.

The Court will structure this Opinion by first stating the applicable law involved in each of the pending motions. The Court will then analyze each pending motion separately.

### A. Liability under Section 107 and Contribution under Section 113 of CERCLA.

■ The Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") was enacted in 1980 to eliminate unsafe hazardous waste sites. *See* H.R.Rep. No. 1016, Part I, 96th Cong., 2d Sess. 1, 17–22, *reprinted in* 1980 U.S.Code Cong. & Admin. News 6119, 6119–25. "Amended in 1986 by the Superfund Amendments and Reauthorization Act of 1986 ('SARA'), Pub.L. No. 99–499, 1986 U.S.Code Cong. & Admin. News (100

Stat.) 1613, CERCLA authorizes the [Environmental Protection Agency ('EPA')] to clean up hazardous waste sites itself and creates a 'Superfund'" to pay for the EPA's activities. *United States v. Aceto Agric. Chems. Corp.*, 872 F.2d 1373, 1377 (8th Cir.1989); 26 U.S.C. § 9507; 42 U.S.C. §§ 9604–05. The 1986 SARA amendments to CERCLA also added section 113(f), which permits private parties to file contribution suits under CERCLA. *See also Key Tronic Corp. v. United States*, 511 U.S. 809, 816, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994).

■ Section 113(f) of CERCLA provides as follows:

(1) Contribution

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

(2) Settlement

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

(3) Persons not party to settlement

(A) If the United States or a State has obtained less than complete relief from a person who has resolved its liability to the United States or the State in an administrative or judicially approved settlement, the United States or the State may bring an action against any person who has not so resolved its liability.

(B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).

(C) In any action under this paragraph, the rights of any person who has resolved its liability to the United States or a State shall be subordinate to the rights of the United States or the State. Any contribution action brought under this paragraph shall be governed by Federal law.

42 U.S.C. § 9613(f). As described, section 113(f) permits private parties, such as Honeywell, to recover its response costs in contribution from any other "person" that is liable or potentially liable for contaminating an applicable site under section 107(a) of CERCLA. Through a contribution suit, a potentially responsible party who has incurred expenditures in remedial efforts at an applicable site may recover any response cost that exceeds its equitable share under the circumstances. *New Jersey Turnpike Auth. v. PPG Indus., Inc.*, 197 F.3d 96, 104 (3d Cir.1999).

A section 113(f) contribution analysis begins with an assessment of whether a particular person or entity falls within the ambit of CERCLA's "central liability provision," section 107(a). 3 S. Cooke, The Law of Hazardous Waste, § 16.01[2] at 16–4 (2001); 42 U.S.C. § 9607(a). The four categories of potentially liable parties are:

(1) the *owner and operator* of a vessel or a facility [where hazardous substances are or may be released],

(2) *any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,*

(3) any person who by contract, agreement, or otherwise *arranged* for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances [where such hazardous substances are or may be released], and

(4) any person who accepts or accepted any hazardous substances for *transport* to disposal or treatment facilities, incineration vessels or sites [where hazardous substances are or may be released].

42 U.S.C. § 9607(a) (emphasis added). If a person or entity falls within one of these four "covered person" categories, then they are subject to liability under CERCLA. Aside from the covered person requirement, a party seeking to establish CERCLA liability must also show that the site in question is a "facility" from which a release or threatened release of a hazardous substance causes a party to incur response costs to remediate the potential environmental harm. 42 U.S.C. § 9607(a); *New Jersey Turnpike Auth.,* 197 F.3d at 103; *United States v. CDMG Realty Co.,* 96 F.3d 706, 712 (3d Cir.1996); *SC Holdings, Inc. v. A.A.A. Realty, Co.,* 935 F.Supp. 1354, 1361 (D.N.J.1996). CERCLA imposes strict, joint and several liability upon responsible parties. *New Jersey Turnpike Auth.,* 197 F.3d at 104.

Section 101(9) of CERCLA defines the term "facility" as:

(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or

(B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

42 U.S.C. § 9601(9). As this Court concluded in its June 13, 2002 Opinion regarding the motion for summary judgment as to Defendants Roned Realty of Union, Inc. and Roned Realty of Jersey City, Inc.,

Under this very broad definition, Study Area 7 constitutes a facility for the purposes of a CERCLA analysis because it is a site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located.

*See Interfaith Cmty. Org. et al. v. Honeywell Int'l, Inc. et al.,* 204 F.Supp.2d 804, 813 (D.N.J.2002), *also available at* 2002 WL 1301351 * 9 (D.N.J. June 13, 2002). Accordingly, it is the law of the case that the Site (Study Area 7) is a facility within the definition of CERCLA.

**B. Contribution Under The New Jersey Spill Compensation and Control Act.**

Count two of Honeywell's Second Amended Cross–Claims and Count Four of

the Grace Defendants Third Amended Cross–Claims seek contribution under the New Jersey Spill Compensation and Control Act ("The Spill Act"). The Spill Act, N.J. Stat. Ann. §§ 58:10–23.11 through 58:10-23.24, is a CERCLA-like environmental statute that provides that:

> Any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred. Such person shall also be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs incurred ...

N.J. Stat. Ann. § 58:10–23.11g(c)(1). The Spill Act's contribution provision provides, in pertinent part, that:

> Whenever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance. In an action for contribution, the contribution plaintiffs need prove only that a discharge occurred for which the contribution defendant or defendants are liable pursuant to the provisions of subsection c. of section 8 of P.L.1976, c. 141 (C.58:10–23.11g), and the contribution defendant shall have only the defenses to liability available to parties pursuant to subsection d. of section 8 of P.L.1976, c. 141 (C.58:10–23.11g). In resolving contribution claims, a court may allocate the costs of cleanup and removal among liable par-

ties using such equitable factors as the court determines are appropriate.

N.J. Stat. Ann. § 58:10–23.11f(a)(2).

> A "person" under the Spill Act includes: public or private corporations, companies, associations, societies, firms, partnerships, joint stock companies, as well as individuals, and when used to designate the owner of property which may be subject to this chapter, includes this State, the United States, any other state of the United States, and any foreign country or government, and any political subdivisions or agents, lawfully owning or possessing property in this State.

N.J.A.C. § 7:1E 1.6. Moreover, a "person responsible for a discharge" includes:

> 1. Any person whose act or omission results or has resulted in a discharge;
>
> 2. Each owner or operator of any facility, vehicle or vessel from which a discharge has occurred;
>
> 3. Any person who owns or controls any hazardous substance which is discharged;
>
> 4. Any person who has directly or indirectly caused a discharge;
>
> 5. Any person who has allowed a discharge to occur; or
>
> 6. Any person who brokers, generates or transports the hazardous substance discharged.

N.J.A.C. § 7:1E–1.6. In addition, a "discharge" is defined as:

> any intentional or unintentional action or omission, unless pursuant to and in compliance with the conditions of a valid and effective Federal or State permit, resulting in the releasing, spilling, pumping, pouring, emitting, emptying or dumping of a hazardous substance into the waters or onto the lands of the State, or into waters outside the jurisdiction of the State when damage may result to the lands, waters or natural resources within

the jurisdiction of the State. This term does not include "leak." N.J.A.C. § 7:1E–1.6. Finally, a hazardous substance includes all substances listed in Appendix A to N.J.A.C. § 7:1E–1.7, which includes chromium and all chromium compounds such as the chromium ore processing residue at issue in this case.

■ The New Jersey Superior Court, Appellate Division recently expanded upon the terms "discharge" and a "person responsible for a discharge" under the Spill Act in *White Oak Funding, Inc. v. Winning,* 341 N.J.Super. 294, 775 A.2d 222 (App.Div.), *certif. denied,* 170 N.J. 209, 785 A.2d 437 (2001). In *White Oak Funding, Inc.,* the Court pointed out that a discharge "requires some act or omission of human conduct which causes a hazardous material not previously present to enter the waters or land." *White Oak Funding, Inc.,* 341 N.J.Super. at 299, 775 A.2d 222 (*citing Atlantic City Mun. Utils. Auth. v. Hunt,* 210 N.J.Super. 76, 99–100, 509 A.2d 225 (N.J.Super.1986)). The Appellate Division further pointed out that "[l]iability does not result from passive migration of a hazardous material that previously entered the site" *Id.* This passage demonstrates that passive inaction is insufficient to create a Spill Act violation. *Compare United States v. Price,* 523 F.Supp. 1055, 1071 (D.N.J.1981), *affirmed,* 688 F.2d 204 (3d Cir.1982) (imposing RCRA liability on parties that have contributed to the handling or disposal of hazardous waste by "passive inaction" or "studied indifference").

However, it is also noteworthy to mention that an entity that acquires contaminated property on or after September 14, 1993, is subject to much stricter liability under the Spill Act:

In addition to the persons liable pursuant to this subsection, any person who owns real property acquired on or after September 14, 1993 on which there has been a discharge prior to the person's acquisition of that property and who knew or should have known that a hazardous substance had been discharged at the real property, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred. Such person shall also be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs incurred by the department or a local unit pursuant to subsection b. of section 7 of P.L.1976, c. 141 (C.58:10–23.11f). Nothing in this paragraph shall be construed to alter liability of any person who acquired real property prior to September 14, 1993.

N.J. Stat. Ann. § 58:10–23.11g(c)(3). As indicated, property owners are strictly liable under this provision unless an innocent purchaser defense is applicable.

## C. Contribution Under The New Jersey Joint Tortfeasors Contribution Law.

Count Three of Honeywell's Second Amended Cross–Claims seeks contribution under the New Jersey Joint Tortfeasors Contribution Law, N.J. Stat. Ann. § 2A:53A. Under the Act, all joint tortfeasors shall have a right to contribution:

Where injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share.

N.J. Stat. Ann. § 2A:53A–3. The mere fact that a party may also be entitled to

contribution under the New Jersey Spill Act does not "affect the right of any party to seek contribution pursuant to any other statute or under common law." N.J. Stat. Ann. § 58:10–23.11f(a)(2). However, a right to contribution under this statute requires a showing that an injury was caused (i.e. environmental harm) by joint tortfeasors and that the party seeking contribution has paid an amount in excess of its pro rata share of the damage.

### D. Declaratory Judgment Pursuant to The New Jersey Uniform Declaratory Judgment Law, CERCLA and the Federal Declaratory Judgment Act.

■ CERCLA, 42 U.S.C. § 9613(g)[6], the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202[7] and the New Jersey Uniform Declaratory Judgment Law, N.J. Stat. Ann. §§ 2A:16–50 through 2A:16–62[8] have all been alleged by the parties to provide a basis for declaratory relief if necessary. A party seeking declaratory judgment must link this request with an entitlement to a substantive right. *For example, if* all CERCLA claims were to be eventually dismissed in this matter, *then* declaratory judgment under CERCLA would not be available. *See Southland*

*Corp. v. Ashland Oil,* 696 F.Supp. 994, 999 (D.N.J.1988) and *see Interfaith Cmty. Org. et al. v. Honeywell Int'l, Inc. et al.,* 204 F.Supp.2d 804, 816 (D.N.J.2002) (holding that because Defendant/Cross Defendant was not subject to liability under the New Jersey law, declaratory judgment should not be available under New Jersey law, but permitting declaratory judgment under federal law to survive dismissal in light of the Court's decision not to dismiss federal claims).

### E. Injunctive Relief Under The Resource Conservation and Recovery Act ("RCRA").

Under RCRA, liability can be established by meeting the requirements of a four-part analysis that looks to whether Roned JC; "(1) has contributed or is contributing to, (2) the past or present handling, storage, treatment, transportation, or disposal of, (3) any solid or hazardous waste that, (4) presents an imminent and substantial endangerment to health or the environment." *Interfaith Cmty. Org.,* 188 F.Supp.2d at 502 (*citing* 42 U.S.C. § 6972(a)(1)(B) and 3 S. Cooke, The Law of Hazardous Waste, § 15.01[3][a] at 15–6 (2001)). For reasons not relevant to this motion, the parties have not submitted ar-

---

6. The full text of CERCLA's contribution provision is quoted in Part II A of this Opinion.

7. The Federal Declaratory Judgment Act provides that:

[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). Declaratory judgment is also permitted where any "[f]urther necessary or proper relief" is required. 28 U.S.C. § 2202.

8. The New Jersey Uniform Declaratory Judgment Law provides that:

All courts of record in this state shall, within their respective jurisdictions, have power to declare rights, status and other legal relations, whether or not further relief is or could be claimed; and no action or proceeding shall be open to objection on the ground that a declaratory judgment is demanded. The enumeration in other sections of this article of the questions determinable and rights declarable in a proceeding brought under the provisions of this article does not limit or restrict the exercise of the general powers conferred by this section in a proceeding for declaratory relief, in which a judgment will terminate the controversy or remove an uncertainty.

N.J. Stat. Ann. § 2A:16–52.

guments in connection to RCRA cross-claims asserted by both Honeywell and the Grace Defendants.

### F. Piercing The Corporate Veil.

 A parent corporation, such as Grace–USA in relation to Ecarg, cannot be held liable under CERCLA as an owner or operator for merely exercising control over a subsidiary unless the corporate veil is pierced. *United States v. Bestfoods*, 524 U.S. 51, 55, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998).[9] Generally, it is "deeply ingrained in our economic and legal systems that a parent corporation ... is not liable for the acts of its subsidiaries." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir.2001); *Bestfoods*, 524 U.S. at 61, 118 S.Ct. 1876 (citations and internal quotation marks omitted). However, where the parent/subsidiary relationship appears to be a facade created merely to perpetrate a fraud or evade the law, veil-piercing is permitted and shareholders (or parent corporations) may be found liable for the actions of the subsidiary. *Bestfoods*, 524 U.S. at 62–63, 118 S.Ct. 1876. In essence, veilpiercing is proper when a subsidiary is an alter ego or instrumentality of the parent corporation. *Id.; Karo Mktg. Corp., Inc. v. Playdrome America*, 331 N.J.Super. 430, 443, 752 A.2d 341 (App.Div.2000). Where a court sees fit to pierce the corporate veil, the protections of corporate formation are lost. This analysis is inherently fact sensitive and requires the assessment of multiple factors. *See Lansford–Coaldale Joint Water Auth. v. Tonolli Corp.*, 4 F.3d 1209, 1222 (3d Cir.1993). Within the Third Circuit, these factors are:

1. Gross undercapitalization
2. Failure to observe corporate formalities
3. Nonpayment of dividends
4. Insolvency of debtor corporation
5. Siphoning of funds from the debtor corporation by the dominant stockholder
6. Nonfunctioning of officers and directors
7. Absence of corporate funds
8. Whether the corporation is merely a facade for the operations of the dominant stockholder

*Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484–85 (3d Cir.2001). It is also noteworthy to mention that veil-piercing in the environmental context, namely CERCLA, requires a " 'high degree of personal involvement in the operation and the decision-making process' of the corporation." *Macysyn v. Hensler*, 329 N.J.Super. 476, 486–87, 748 A.2d 591 (App.Div.2000) (citing *United States v. Conservation Chem. Co.*, 628 F.Supp. 391, 420 (W.D.Mo.1985)).

### G. Strict Liability for Engaging in Abnormally Dangerous Activities.

 To demonstrate common law strict liability, a party must have engaged in an abnormally dangerous activity that causes harm to another. New Jersey law directs courts to apply strict liability on a case-by-case basis. *See T & E Indus., Inc. v. Safety Light Corp.*, 123 N.J. 371, 391, 587 A.2d 1249 (1991); *State Dep't. of Envtl. Prot. v. Ventron*, 94 N.J. 473, 491, 468 A.2d 150 (1983); *Allied Corp. v. Frola*, 1993 WL 388970 * 12 (D.N.J. Sept.21, 1993). In defining the phrase "abnormally dangerous activity," New Jersey courts have adopted the Restatement (Second) of Torts, § 520, which provides as follows:

9. Of course, if a parent corporation has actively participated in and exercised control over "facility" may be held directly liable as an operator of a facility without having to resort to veil-piercing principles. *Bestfoods*, 524 U.S. at 55, 66–67, 118 S.Ct. 1876.

In determining whether an activity is abnormally dangerous, the following factors are to be considered:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

### III. W.R. GRACE & CO. AND W.R. GRACE LTD.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS ONE THROUGH FOUR OF HONEYWELL SECOND AMENDED CROSS–CLAIMS AGAINST THE GRACE DEFENDANTS.

Grace–USA and Grace–England's motion for summary judgment seeks to partially dismiss Honeywell's cross-claims against them. Honeywell's Second Amended Cross–Claims seek contribution under section 113(f) of the CERCLA (Count One), the Spill Act, N.J. Stat. Ann. §§ 58:10–23.11 through 58:10–23.24 (Count Two), and the New Jersey Joint Tortfeasors Contribution Law, N.J. Stat. Ann. § 2A:53A (Count Three). The motion also seeks to dismiss Count Four of Honeywell's Second Amended Cross–Claims seeking declaratory judgment pursuant to the New Jersey Uniform Declaratory Judgment Law, CERCLA and the Federal Declaratory Judgment Act.

### A. W.R. Grace Ltd. ("Grace–England").

█ Honeywell does not appear to have challenged the motion of Grace–England except that Honeywell claims that this Court should acknowledge that Grace–England lacks standing to assert any cross-claims against Honeywell. A review of the submissions of counsel in connection with the present motion indicates that Grace–England does not have any connection or interest in the Site except for the fact that it once owned a percentage of stock in Daylin, Inc., a company that once owned the site at issue here. This, by itself, does not render Grace–England liable for the Site's present condition.

Grace–England responds that it has standing to assert cross-claims because it has been sued by Interfaith. Grace England suggests that as one of the multiple Defendants in this litigation, it is entitled to contribution rights against Honeywell if Interfaith is successful in its suit against Grace–England.

█ Standing requires injury-in-fact, causation and redressability. *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 103–04, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Here, it is unclear that Grace–England has suffered any injury-in-fact other than being named as a Defendant in this lawsuit. As a non-owner of the Site, Grace–England lacks standing to assert cross-claims against Honeywell. Furthermore, while RCRA does provide for standing even when a non-owner can assert an "identifiable trifle" of an injury, Grace–England's ownership of stock in the Site's prior owner (Daylin) is not sufficiently distinct and palpable an interest to justify standing. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); *Chicago & Grand Trunk R.*

*Co. v. Wellman,* 143 U.S. 339, 345, 12 S.Ct. 400, 36 L.Ed. 176 (1892); *Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 71 (1990); *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Sierra Club v. Morton,* 405 U.S. 727, 735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Accordingly, this Court holds that all cross-claims asserted by Honeywell in its Second Amended Cross–Claims against Grace England are dismissed for lack of standing. Similarly, all cross-claims asserted by Grace–England against Honeywell in its Third Amended Cross–Claims are also dismissed.

### B. W.R. Grace & Company ("Grace–USA").

In light of Part III A of this Opinion, Grace–USA and Ecarg are the only remaining Grace Defendants. The record is clear that Ecarg is the only Grace entity that holds formal title to the Roosevelt Drive In and Clean Machine Car Wash sites. However, Honeywell asserts that GraceUSA is also liable because they are the actual owners and operators of the Site, whereas Ecarg is merely a shell used by Grace–USA to shield itself from potential liability arising out of the Site. If this Court were to find against Honeywell on this point of law and conclude that Ecarg's veil should not be pierced, then Grace–USA could only be found liable if it could be shown that a material issue of fact exists as to whether Grace–USA's direct actions contributed to the contaminated condition of the Site. If both of these questions are answered in the negative, then Grace–USA is entitled to have Honeywell's cross-claims against them dismissed.

### 1. Should This Court Pierce Ecarg's Corporate Veil?

The creation of Ecarg for the purposes of owning the Site is not unusual from a corporate standpoint. As a general matter, Ecarg's actions, as owners of the Site, should not subject GraceUSA to liability. *See Bestfoods,* 524 U.S. at 63–64, 118 S.Ct. 1876. However, *if* Honeywell is correct that Ecarg is merely the alter ego of Grace–USA, then Honeywell is correct that Grace–USA should be subject to derivative liability. *Id.; Pearson,* 247 F.3d at 484; *Karo Mktg. Corp., Inc.,* 331 N.J.Super. at 443, 752 A.2d 341.

### a. Gross Undercapitalization and the Absence of Corporate Funds.

The first factor in the Third Circuit's eight factor test for veil-piercing looks to whether the suspect corporate entity is grossly undercapitalized. The related seventh factor assesses whether the suspect corporate entity lacks corporate funds. Honeywell states that Ecarg's sole asset is the Site and that Ecarg does not generate income itself. Grace–USA responds that these facts do not demonstrate undercapitalization and that Honeywell must present more specific information about Ecarg's lack of capital to meet its burden on this factor. This Court agrees with Grace–USA. Honeywell's statements rely on the testimony of a Frank Brennan, who stated in his March 16, 1995 deposition that to his knowledge, Ecarg was not operating a business. *See* Declaration of Michael J. Caffrey, Ex. 29 at T46:22–23. In contrast, the record reflects that Ecarg owns the Site and has "concrete plans to develop the Site for residential purposes." Nagy Decl., ¶ 5. Admittedly, the record does reflect that Ecarg is presently in bankruptcy proceedings. *See* Second Declaration of Michael J. Caffrey, Ex. 56 (Ecarg's Statement of Financial Affairs

filed on June 1, 2001, in connection with Ecarg's bankruptcy proceeding in the District of Delaware). The record further reflects that Grace–USA has paid taxes related to the Site on Ecarg's behalf. *Id.* But the mere fact that Ecarg is in bankruptcy proceedings does not require this Court to conclude that it was undercapitalized. In fact, absent additional information, this Court is not persuaded that a factual dispute exists on this issue.

### b. *Failure to Observe Corporate Formalities.*

The second factor in the Third Circuit's test for veil-piercing requires the Court to assess whether corporate formalities are in place. Honeywell argues that Ecarg has no employees, legal staff, officers or directors. Honeywell also points out that the Grace Defendants have frequently referred to themselves in the collective sense, which Honeywell argues is indicative that they are not genuinely distinct entities. Honeywell further argues that Ecarg is a mere shell, existing only to shield Grace–USA from potential liability.

This Court disagrees with Honeywell. First, this Court finds that counsel for the Grace Defendants referred to each of the three Grace entities collectively in submissions to this Court for convenience. Second, the mere fact that Ecarg may not have had a separate set of in-house counsel does not suggest that Ecarg and Grace–USA were one in the same. Third, Ecarg's bankruptcy filing dated June 1, 2001 shows that Ecarg has a separate Board of Directors, corporate officers, and maintains separate audited books and records. *See* Second Caffrey Decl., Ex. 56, ¶ 17, 19–20. Honeywell's mere disagreement with Grace–USA on this point falls short of establishing a genuine dispute of material fact. Accordingly, this Court holds that this factor in the Third Circuit's veil-piercing analysis weighs in favor of Grace–USA.

### c. *Nonpayment of Dividends.*

No evidence has been submitted on this factor by any of the parties.

### d. *Insolvency of Debtor Corporation.*

Ecarg filed for relief under Chapter 11 of the Bankruptcy Code on April 2, 2001, in the District of Delaware. As of the time of the filing of this motion in September 2001, the Bankruptcy proceeding remained pending. Accordingly, this factor weighs in favor of Honeywell.

### e. *Siphoning of Funds From the Debtor Corporation by The Dominant Stockholder.*

Honeywell has suggested in its submissions that Grace–USA has exercised dominion over Ecarg by assuming most of its financial obligations. For example, Honeywell points out that Grace–USA paid taxes related to the Site to the City of Jersey City on Ecarg's behalf. Honeywell also contends that Grace USA controlled and paid for remedial and investigative efforts at the Site (i.e., the demolition of the Goodrich building). Yet, these assertions do not suggest that Grace–USA is actually siphoning funds from Ecarg. According to Honeywell, Ecarg is a nonoperating entity with no revenue that relies solely on Grace USA for its financial survival. Honeywell has not argued that Grace–USA is somehow extracting funds from Ecarg. It should be pointed out that while Grace–USA did pay some of Ecarg's costs, these transactions were debited as intercorporate debts that Ecarg must repay. *See* Second Caffrey Decl., Ex. 56, ¶ 3(b). Accordingly, this Court finds no factual dispute on this factor.

### f. *Nonfunctioning of Officers and Directors.*

Honeywell supports its argument on this factor by relying on the testimony of

Frank Brennan, which Honeywell contends is conclusive proof that Ecarg is nonoperating and totally controlled by Grace–USA. Caffrey Decl., Ex. 29 at T46:2–23; T 57:11–24. Grace–USA responds that Honeywell has presented Mr. Brennan's testimony out of context. Ecarg's June 1, 2001, bankruptcy filing, for example, lists eight directors and/or officers as well as Grace–USA, which is the parent company. *See* Second Caffrey Decl., Ex. 56, ¶ 19(b) (listing Grace USA as the parent company and W. Brian McGowen, Akos L. Nagy, Paul J. Norris, Robert M. Tarola, David B. Siegel, Elyse Napoli Filon, David Nakashige and Mark A. Shelnitz as officers and/or directors of Ecarg). This evidence, when compared to Honeywell's bare assertion that Ecarg lacks corporate structure, renders Honeywell's arguments unavailing. This factor weighs in favor of Grace–USA.

### g. *Whether The Corporation is Merely a Facade for The Operations of The Dominant Stockholder.*

This Court's analysis turns on this point because a review of the record does not suggest that Ecarg merely serves as a facade for the operations of Grace–USA. First, Honeywell's arguments that Grace–USA is the successor-in-interest to Daylin are rejected. *See* A–2973–75 (Grace–USA differentiates itself from Daylin, a former subsidiary sold to a third party). In addition, this Court is also unpersuaded by Honeywell's assertions that Ecarg is a mere shell of Grace–USA. Ecarg was created in 1975, six years prior to Daylin's acquisition of the Site in 1981, four years prior to Grace–USA's acquisition of Daylin in 1979, and at least eleven years prior to the full possession and ownership of the Site by Ecarg. *See* A1908 20; Nagy Decl., ¶ 3. According to the Grace Defendants, Ecarg was formed to hold property for relocating Grace employees. The record, as a whole, does not support the conclusion that Ecarg was formed for some illegal or unlawful purpose. This is especially true because the burden of proving the need for veil-piercing is a high one. Veil-piercing requires complete domination, not just the mere suggestion that such is the case. Honeywell's arguments, although well reasoned, are unconvincing. Consequently, this Court finds, as a matter of law, that Ecarg's corporate veil shall not be pierced so as to subject Grace–USA to derivative liability.

### 2. *Is Grace–USA Directly Liable for Any Actions Pertaining To The Site?*

Honeywell also suggests that Grace–USA should be found directly liable under CERCLA as an "operator." CERCLA defines the term "operator" broadly as "any person owning or operating such facility." 42 U.S.C. § 9601(20)(A)(ii). As pointed out by the Supreme Court in *Bestfoods,* this definition is not particularly instructive. *Bestfoods,* 524 U.S. at 66, 118 S.Ct. 1876. The Court in *Bestfoods* clarified the "ordinary or natural meaning" of the term "operator" with the following reasoning:

> In a mechanical sense, to "operate" ordinarily means "[t]o control the functioning of; run: *operate a sewing machine.*" American Heritage Dictionary 1268 (3d ed.1992); *see also* Webster's New International Dictionary 1707 (2d ed.1958) ("to work; as, to *operate* a machine"). And in the organizational sense more obviously intended by CERCLA, the word ordinarily means "[t]o conduct the affairs of; manage: *operate a business.*" American Heritage Dictionary, *supra,* at 1268; *see also* Webster's New International Dictionary, *supra,* at 1707 ("to manage"). So, under CERCLA, an operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility. To sharpen the

definition for purposes of CERCLA's concern with environmental contamination, **an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.**

*Bestfoods,* 524 U.S. at 66–67, 118 S.Ct. 1876 (Italics in original; bold type added).

This Court is unpersuaded by Honeywell's arguments in support of finding Grace–USA directly liable as an operator. All of Grace–USA's actions in connection with the Site involve Grace–USA's interactions with its subsidiary, Ecarg. Grace USA has taken no actions regarding the Site specifically related to pollution or environmental compliance. Any actions by GraceUSA in connection to the Site fall within the range of permissible interactions by a parent corporation with its subsidiary. This Court finds that Grace–USA is not an owner or operator as defined by the State of New Jersey's regulations construing the Spill Act. *See* N.J.A.C. § 7:1E1.6. Having adjudged Grace–USA to have neither owned nor operated the Site, this Court further finds that Honeywell is not entitled to declaratory relief as to Grace–USA.

### 3. *Conclusion.*

For the reasons stated in Part III of this Opinion, W.R. Grace & Co. and W.R. Grace Ltd.'s motion for partial summary judgment pursuant to Rule 56(d) of the Federal Rules of Civil Procedure on Counts One through Four of Honeywell Second Amended Cross–Claims is **granted.** Counts One through Four of Honeywell's Second Amended Cross–Claims are **dismissed** as to Grace–England and Grace–USA, but remain as to Ecarg. With regard to Honeywell's RCRA cross-claim (Count Five), this Court shall dismiss Count Five of Honeywell's Second Amended Cross–Claims as to Grace–England due to lack of standing. Honeywell's RCRA claim against Grace–USA survives this motion.

### IV. W.R. GRACE & CO.'S MOTION FOR SUMMARY JUDGMENT ON COUNTS TWO AND TWELVE OF ITS THIRD AMENDED CROSS-CLAIMS AGAINST HONEY-WELL.

 This motion by Grace–USA seeks partial summary judgment as to Count Two of the Grace Defendants Third Amended Cross–Claims seeking cost recovery under section 107 of CERCLA and Count Twelve seeking declaratory judgment.

Rather than discuss this motion at length, this Court finds that issues of material fact do exist and as such, Grace–USA's motion must be **denied.** In particular, some of the issues in dispute include:

1. Whether there is a present release or threat of release of hazardous COPR at the Site?

2. Whether the costs incurred by Grace–USA in remediating contaminated soils at the Site were necessary costs of response recoverable under section 107(a) of CERCLA?

3. Whether remedial efforts at the Site should be required to meet industrial or unrestricted residential cleanup standards?

While these three factual disputes are not intended to represent an exhaustive list of all factual matters in dispute, this Court does find that the above issues justify this Court in denying GraceUSA's motion for summary judgment on Count Two (CERCLA cost recovery) and Count Twelve (Declaratory Judgment) of the Grace Defendants Third Amended Cross–Claims.

## V. HONEYWELL'S CROSS MOTION FOR SUMMARY JUDGMENT AGAINST W.R. GRACE & CO. SEEKING TO DISMISS COUNTS TWO AND TWELVE OF W.R. GRACE & CO.'S THIRD AMENDED CROSS–CLAIMS.

In response to Grace–USA's motion for summary judgment on Counts Two and Twelve of its Third Amended Cross–Claims, Honeywell has filed a cross-motion to dismiss these counts. This Court **denies** Honeywell's motion because neither Grace–USA nor Honeywell have convinced this Court that there are no genuine issues of material fact in dispute regarding GraceUSA's CERCLA claim. Therefore, Grace–USA, having already been found to have never owned or operated the Site in Part III of this Opinion, may seek to recover its costs at trial if it can show that the costs it has incurred were necessary costs of response under CERCLA. Furthermore, Grace–USA is also permitted to seek declaratory judgment under section 113(g) of CERCLA as to the applicable cleanup standards for the Site.

## VI. ECARG, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS THREE AND TWELVE OF ITS THIRD AMENDED CROSS–CLAIMS AGAINST HONEYWELL.

In this motion, Ecarg seeks partial summary judgment on Counts Three (contribution under section 113 of CERCLA) and Twelve (declaratory judgment) of its Third Amended CrossClaims against Honeywell. Through this motion Ecarg seeks to have this Court hold that (1) Honeywell is liable under section 113(g) of CERCLA for any monies paid by Ecarg in excess of its pro rata share of damage or contamination of the Site (the specific amount of response costs to be determined at trial); and that (2) Honeywell is strictly liable for contribution for all future costs necessary to cleanup the Site to unrestricted residential use standards.

Honeywell opposes this motion on various grounds. First, Honeywell argues that Ecarg has not incurred any costs at the Site because Grace–USA has operated the Site, not Ecarg. This Court rejects this argument. Second, Honeywell asserts that insofar as Ecarg may have incurred any costs in relation to the Site, these costs were not necessary costs of response recoverable under CERCLA. Third, Honeywell asserts that a portion of the costs Ecarg or Grace–USA incurred are unrecoverable because they involved the removal of petroleum, which is statutorily excluded from the definition of hazardous substance. Fourth, Honeywell asserts that Ecarg is time-barred from seeking to recover any costs it may have incurred. Fifth, Honeywell contends that Ecarg is not entitled to declaratory judgment and that Ecarg's position that the Site must be restored to residential rather than industrial standards is incorrect.

This Court finds that the five above-referenced arguments by Honeywell indicate that there are material issues that are factually in dispute with regard to Ecarg's cross-claim for contribution. Consequently, this Court holds that Ecarg's motion for partial summary judgment shall be **denied**.

## VII. HONEYWELL'S CROSS MOTION FOR SUMMARY JUDGMENT AGAINST ECARG, INC. SEEKING TO DISMISS COUNTS THREE AND TWELVE OF ECARG, INC.'S THIRD AMENDED CROSS–CLAIMS.

In response to Ecarg's motion seeking partial summary judgment, Honeywell has crossmoved, insisting that Ecarg's claims for contribution and declaratory judgment should be dismissed as a matter of law. This Court disagrees. The record does

not show that Ecarg has not incurred response costs, nor does the record reflect that Ecarg's claim for declaratory judgment is unfounded. Accordingly, this Court **denies** Honeywell's cross-motion for summary judgment because genuine issues of material fact exist that should be further developed at trial.

## VIII. THE GRACE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT FIVE OF THEIR THIRD AMENDED CROSS–CLAIMS SEEKING TO IMPOSE STRICT LIABILITY UPON HONEYWELL.

 Count Five of the Grace Defendants' Third Amended Cross Claims seeks to impose strict liability upon Honeywell for the dumping activities engaged in by Honeywell's predecessor, Mutual, and Honeywell's subsequent failure to adequately remove Mutual's waste from the Site. The Grace Defendants argue that the Site's contaminated condition poses a high degree of risk to human health and the environment and that Honeywell's failure to conduct full remedial efforts at the Site constitutes a continuing tort and an abnormally dangerous activity.

While the Grace Defendants argue that Honeywell has done virtually nothing to remediate the Site, Honeywell responds that it has spent close to six million dollars to fully abate the potential harm to human health and the environment posed by the COPR at the Site. These contrasting positions demonstrate the factual dispute that necessitates the denial of this motion. Mutual's dumping of COPR on the Site is the type of harm that has been found to be an "abnormally dangerous activity." *See Ventron*, 94 N.J. at 492–93, 468 A.2d 150

(finding that the past or present dumping of toxic or hazardous waste, particularly in the Hackensack Meadowlands area, was an abnormally dangerous activity). However, Honeywell claims to have fully contained the environmental threat posed by the COPR. In order to properly conduct the case-by-case analysis required by case law, this Court believes that these issues must be further developed at trial. Accordingly, the Grace Defendants' motion for partial summary judgment on Count Five of the Grace Defendants' Third Amended Cross–Claims is **denied**.

## IX. HONEYWELL'S MOTION FOR SUMMARY JUDGMENT AS TO THE GRACE DEFENDANTS' THIRD AMENDED CROSS–CLAIMS.

Through this motion, Honeywell makes numerous contentions. First, Honeywell contends that W.R. Grace, Ltd. (Grace–England) lacks standing to maintain any cross-claims against Honeywell. This Court agrees. Consistent with Part III A of this Opinion, this Court finds that Grace–England is not sufficiently connected to the Site to justify standing.

 Second, Honeywell asserts that the common law cross-claims asserted by the Grace Defendants are time-barred. According to Honeywell, the applicable statute of limitation period is stated in New Jersey's statute addressing injuries to real property, which is codified at N.J. Stat. Ann. § 2A:14–1 [10]. According to this statute, the limitations period is six years. The Grace Defendants have not challenged this legal argument, but instead argue that the continuing tort doctrine applies. While waste dumping and soil contamination are generally thought to create permanent trespasses rather than continuing

---

**10.** N.J. Stat. Ann. § 2A:14–1 provides, in pertinent part, that "[e]very action at law ... for any tortious injury to real or personal property ... shall be commenced within 6 years next after the cause of any such action shall have accrued".

trespasses, *see Dombrowski v. Gould Electronics, Inc.,* 954 F.Supp. 1006, 1013 (M.D.Pa.1996), this Court finds that the continued presence of chromium at the Site may constitute a continuing threat to the surrounding environment. While Honeywell is correct that the present record supports the conclusion that the Grace Defendants became aware of chromium contamination at the Site in or around 1983, this Court finds that this issue should not be adjudged as a matter of law.

Third, Honeywell contends that the Grace Defendants' common law claims are also barred by the entire controversy doctrine. New Jersey's entire controversy doctrine provides that the "non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims." New Jersey Court Rule ("R.") 4:30A. The doctrine encourages the conclusive determination of a legal controversy by steering parties away from fragmented, multiple and duplicative litigation. *Fornarotto v. American Waterworks Co., Inc.,* 144 F.3d 276, 278 (3d Cir.1998). Honeywell argues that the Grace Defendants and Honeywell have been involved in several matters involving the Site and thus, the Grace Defendants are now barred from asserting common law claims against Honeywell. This Court finds that Honeywell should have availed itself of this potential defense at an earlier stage of this litigation. Accordingly, this request by Honeywell is denied.

Fourth, Honeywell asserts that they are entitled to partial summary judgment on various aspects of their CERCLA and Spill Act cross-claims against the Grace Defendants. This Court does not agree. These issues are central to this litigation and should be further developed at trial.

In sum, this Court finds that Honeywell's motion for summary judgment is **granted** as to the issue of Grace-Eng-

land's lack of standing and **denied** as to all other issues.

## X. ECARG, INC., THE NEW JERSEY SPILL CONTROL AND COMPENSATION ACT, THE NEW JERSEY JOINT TORTFEASORS CONTRIBUTION ACT, AND HONEYWELL'S REQUEST THAT THIS COURT RECONSIDER ITS JUNE 13, 2002 OPINION IN PART.

On or about June 28, 2002, Ecarg made a letter request to have this Court's June 13, 2002, Opinion with regard to Roned Realty of Jersey City, Inc.'s ("Roned–JC") liability under the Spill Act and New Jersey Joint Tortfeasors Contribution Act applied to Ecarg as law of the case. Thereafter, on July 8, 2002, Honeywell opposed Ecarg's letter request and asked that this Court reconsider its June 13, 2002 ruling. For the foregoing reasons, Ecarg's request is **denied**, Honeywell's request for reconsideration is **granted**, and upon reconsideration, this Court's prior decision dismissing Honeywell's claims under the New Jersey Spill Act and New Jersey Joint Tortfeasors Act is reversed.

### A. Ecarg's Request That This Court Apply Its June 13, 2002 Reasoning Regarding Roned–JC's Liability Under The Spill Act to Ecarg as the Law of the Case.

Ecarg's request that this Court apply the law of the case doctrine must be denied. This Court agrees with Honeywell that a question of fact exists as to when Ecarg actually acquired the Site. As described above in Part II B, if Ecarg is found to have acquired the Site on or after September 14, 1993, it will be strictly liable "without regard to fault, for all cleanup and removal costs no matter by whom incurred." N.J. Stat. Ann. § 58:10–23.11g(c)(3). Furthermore, even if Ecarg were to be found to have acquired the Site prior to September 14, 1993, recent

amendments to the New Jersey Spill Act, codified at N.J. Stat. Ann. § 58:10–23.11g(d)(5)[11], direct all owners of contaminated property acquired prior to September 14, 1993, to comply with certain requirements by a preponderance of the evidence to be absolved from potential Spill Act liability. For example, the "person" must acquire the real property after the discharge occurred. N.J. Stat. Ann. § 58:10–23.11g(d)(5)(a). In addition, the person must not have known nor have possessed a reason to know that the property was contaminated with hazardous substances. · N.J. Stat. Ann. § 58:10–23.11g(d)(5)(b). Moreover, the person must not be responsible for the discharge of hazardous substances in any way. N.J. Stat. Ann. § 58:10–23.11g(d)(5)(c). Lastly, the Spill Act requires the undertaking of an investigation of all prior owners and uses of the land upon acquisition. N.J. Stat. Ann. § 58:10–23.11g(d)(5). If any discharge is discovered, it must be reported. N.J. Stat. Ann. § 58:10–23.11g(d)(5)(d).

In light of the above-referenced statutory provisions, this Court denies Ecarg's request.

### B. Honeywell's Request That This Court Reconsider Its June 13, 2002 Holding Regarding The Spill Act.

 As described in the Comment to Local Civil Rule 7.1:

> There is no express provision in the Federal Rules of Civil Procedure for reconsideration or reargument of a judicial decision. *See United States v. Compaction Systems Corp.*, 88 F.Supp.2d 339, 345 (D.N.J.1999) (Hedges). The closest federal rule is Fed.R.Civ.P. 59(e), which allows a court to "alter or amend" a judgment. In this district, however, L. Civ. R. 7.1(g) creates a specific proce-

---

**11.** N.J. Stat. Ann. § 58:10–23.11g(d)(5) provides as follows:

(5) A person, including an owner or operator of a major facility, who owns real property acquired prior to September 14, 1993 on which there has been a discharge, shall not be liable for cleanup and removal costs or for any other damages to the State or to any other person for the discharged hazardous substance pursuant to subsection c. of this section or pursuant to civil common law, if that person can establish by a preponderance of the evidence that subparagraphs (a) through (d) apply:

(a) the person acquired the real property after the discharge of that hazardous substance at the real property;

(b)

(I) at the time the person acquired the real property, the person did not know and had no reason to know that any hazardous substance had been discharged at the real property, or

(ii) the person acquired the real property by devise or succession, except that any other funds or property received by that person from the deceased real property owner who discharged a hazardous sub-

stance or was in any way responsible for a hazardous substance, shall be made available to satisfy the requirements of P.L.1976, c. 141;

(c) the person did not discharge the hazardous substance, is not in any way responsible for the hazardous substance, and is not a corporate successor to the discharger or to any person in any way responsible for the hazardous substance or to anyone liable for cleanup and removal costs pursuant to this section;

(d) the person gave notice of the discharge to the department upon actual discovery of that discharge.

To establish that a person had no reason to know that any hazardous substance had been discharged for the purposes of this paragraph (5), the person must have undertaken, at the time of acquisition, all appropriate inquiry on the previous ownership and uses of the property based upon generally accepted good and customary standards.

Nothing in this paragraph (5) shall be construed to alter liability of any person who acquired real property on or after September 14, 1993.

dure by which a party may, within 10 days of the entry of an order, ask either a District Judge or a Magistrate Judge to take a second look at any decision "upon a showing that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision."

Lite, N.J. Federal Practice Rules, Comment 6 to L. Civ. R. 7.1 (Gann 2002 ed.). Consequently, motions for reconsideration filed in the District of New Jersey are governed by L. Civ. R. 7.1(g) rather than Fed.R.Civ.P. 59(e). *United States v. Compaction Sys. Corp.*, 88 F.Supp.2d 339, 345 (D.N.J.1999).

■■■■■ Local Rule 7.1(g) requires the moving party to "set[ ] forth concisely the matters or controlling decisions which counsel believes the [court] has overlooked." *L. Civ. R.* 7.1(g)[12]. A motion under Rule 7.1(g) may be granted if: (1) "an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice." *Database America, Inc. v. Bellsouth Adver. & Pub. Corp.*, 825 F.Supp. 1216, 1220 (D.N.J. 1993); *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995). Relief by way of a motion for reargument is "an extraordinary remedy" that is to be granted "very sparingly." *NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F.Supp. 513, 516 (D.N.J.1996); *Maldonado v. Lucca*, 636 F.Supp. 621, 630 (D.N.J.1986); *Sagaral v. Mountainside Hosp.*, 2001 U.S. Dist. LEXIS 6872, * 3 (D.N.J. March 28, 2001).

■■■ Local Rule 7.1(g) governing reconsideration does not contemplate a recapitulation of arguments considered by the court before rendering its decision. *See Bermingham v. Sony Corp. of Am., Inc.*, 820 F.Supp. 834, 856 (D.N.J.1992), *aff'd*, 37 F.3d 1485 (3d Cir.1994); *Carteret Sav. Bank, F.A. v. Shushan*, 721 F.Supp. 705, 709 (D.N.J.1989). Rather, the rule permits a reconsideration only when "dispositive factual matters or controlling decisions of law" were presented to the court but were overlooked. *Resorts Int'l v. Greate Bay Hotel and Casino*, 830 F.Supp. 826, 831 (D.N.J.1992); *Khair v. Campbell Soup Co.*, 893 F.Supp. 316, 337 (D.N.J. 1995). In other words, a motion for reconsideration is *not an appeal*. It is improper on a motion for reconsideration to "ask the court to rethink what it ha[s] already thought through-rightly or wrongly." *Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co.*, 744 F.Supp. 1311, 1314 (D.N.J.1990).

■■■ Because this Court overlooked the applicability N.J. Stat. Ann. § 58:10–23.11g(c)(3) and d(5)(a-d), this Court grants Honeywell's request for reconsideration. On June 13, 2002, this Court reasoned that a question of fact exists as to when Roned–JC acquired ownership of the Trader Horn Site. This Court specifically stated that:

> Roned–JC is the owner of the Trader Horn Site as evidenced by a 1995 deed. However, Roned–JC maintains that it has actually owned the Trader Horn site since 1979 and that the 1995 deed was recorded to correct prior errors in the recording process. Honeywell argues

---

**12.** The full text of Local Civil Rule 7.1(g) reads:

> A motion for reargument shall be served and filed within 10 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge. There shall be served with the notice a brief setting forth concisely the matters or controlling decisions which counsel believes the Judge or Magistrate Judge has overlooked. No oral argument shall be heard unless the Judge or Magistrate Judge grants the motion and specifically directs that the matter shall be reargued orally.

that this factual' dispute over the applicability of N.J. Stat. Ann. § 58:10–23.11g(c)(3) necessitates the denial of Roned–JC's motion. *See* Second Declaration of Edward Navlen, ¶¶ 3–4, Exhibit A; Fourth Declaration of Michael J. Caffrey, ¶¶ 3–4, Exhibits 70, 71. *Interfaith Cmty. Org. et al.,* 204 F.Supp.2d at 814. These facts create a genuine dispute of when Roned–JC acquired the Trader Horn Site. This fact is material because the Spill Act imposes·strict liability on post-September 14, 1993 owners of contaminated real property "for all cleanup and removal costs no matter by whom incurred." *See* N.J. Stat. Ann. § 58:10–23.11g(c)(3). This Court also finds that a factual dispute exists as to whether Roned–JC has met all of the requirements imposed upon pre-September 14, 1993 owners of contaminated real property as set forth in N.J. Stat. Ann. § 58:10–23.11g(d)(5). Accordingly, this Court finds that its prior dismissal of Honeywell's cross-claim against Roned–JC under the New Jersey Spill Act was in error and as a result, this claim shall be adjudicated at trial.

**C. Honeywell's Request That This Court Reconsider Its June 13, 2002 Holding Regarding The New Jersey Joint Tortfeasors Contribution Act.**

In light of this Court's reconsideration and reversal of its June 13, 2002 reasoning regarding the New Jersey Spill Act, this Court similarly reinstates Honeywell's cross-claim against Roned–JC under the New Jersey Joint Tortfeasor's Contribution Act, N.J. Stat. Ann. § 2A:53A–3.

**XI. HACKENSACK RIVERKEEPER MOTION FOR A STAY AND HONEYWELL'S MOTION TO DISMISS.**

On March 27, 2000, Hackensack Riverkeeper, Inc. and William Sheehan filed suit, Civil Action No. 00–1451, against Honeywell and the Roned Defendants alleging the same claims made by Interfaith in its complaint in the present matter, Civil Action No. 95–2097. On or about September 4, 2001, these matters were consolidated, thus joining Hackensack Riverkeeper and Sheehan as consolidated plaintiffs. On June 14, 2002, these consolidated Plaintiffs filed a motion to Stay Further Proceedings in the Hackensack Riverkeeper matter, arguing that the Interfaith lead matter will have preclusive effect upon the Hackensack Riverkeeper matter and that "[a]ll of the issues ... can be decided in the [Interfaith] case." Roned–JC does not oppose this motion. Honeywell, on the other hand, argues that this motion indicates that the consolidated plaintiffs do not intend to genuinely prosecute this matter. Consequently, Honeywell requests that this Court dismiss the Hackensack Riverkeeper matter without prejudice or in the alternative, permit Honeywell to conduct discovery.

This Court agrees with the consolidated Plaintiffs and holds that the Hackensack Riverkeeper matter shall be **stayed**. A review of the record demonstrates that the issues to be litigated in the Interfaith matter will have preclusive effect on the claims made in the Hackensack Riverkeeper matter. This Court further **denies** Honeywell's motion to dismiss and similarly **denies** Honeywell's alternative request to conduct additional discovery at this time.

## CONCLUSION

An Order accompanies this Opinion and summarizes the ten motions resolved by this Court in this Opinion.

## ORDER

Presently before the Court are ten motions by Defendants W.R. Grace & Co., W.R. Grace Ltd., Ecarg, Inc. ("the Grace

Defendants"), and Honeywell International, Inc. ("Honeywell") and by consolidated Plaintiffs William Sheehan and Hackensack Riverkeeper, Inc. This matter is set for trial on October 15, 2002. The ten pending motions are:

| | |
|---|---|
| Docket No. 149–1 | Motion by W.R. Grace & Co. and W.R. Grace, Ltd.· for partial summary judgment as to Counts One Through Four of Honeywell Second Amended Cross–Claims Against the Grace Defendants. |
| Docket No. 150–1 | Motion by the Grace Defendants for partial summary judgment on Count Five of Their Third Amended CrossClaims seeking to impose Strict Liability upon Honeywell. |
| Docket No. 151–1 | Motion by W.R. Grace & Co. For Summary Judgment on Counts Two and Twelve of its Third Amended Cross Claims Against Honeywell. |
| Docket No. 152–1 | Motion by Ecarg, Inc. for Partial Summary Judgment on Counts Three and Twelve of its Third Amended Cross Claims Against Honeywell. |
| Docket No. 168–1 | Cross Motion by Honeywell International, Inc. for Summary Judgment Against W.R. Grace & Co. Seeking to Dismiss Counts Two and Seven of W.R. Grace & Co.'s Third Amended Cross–Claims. |
| Docket No. 169–1 | Cross Motion by Honeywell International, Inc. for Summary Judgment Against Ecarg, Inc. Seeking to Dismiss Counts Three and Seven of Ecarg, Inc.'s Third Amended Cross–Claims. |
| Docket No. 180–1 | Motion by Honeywell International, Inc. for summary judgment as to the Grace Defendants Third–Amended–Cross–claims. |
| Docket No. 239–1 | Motion by consolidated Plaintiffs William Sheehan and Hackensack Riverkeeper, Inc. to stay proceedings in the Hackensack Riverkeeper matter. |
| Docket No. 242–1 | Cross Motion By Honeywell to dismiss the Hackensack Riverkeeper matter, Civil Action No. 00–1451, without prejudice or, |
| Docket No. 242–2 | in the alternative, to take further discovery. |

This Court has extensively reviewed the submissions both in support of and in opposition to each of the above-referenced motions. For the reasons discussed in the Opinion of this Court filed herewith; and for good cause shown,

IT IS ON THIS 26th DAY OF JULY 2002;

**ORDERED** that W.R. Grace & Co. and W.R. Grace, Ltd.'s motion for partial summary judgment as to Counts One Through Four of Honeywell Second Amended Cross–Claims [Docket No. 149–1] is **granted**; and it is further,

**ORDERED** that the Grace Defendants' motion for partial summary judgment on Count Five of their Third Amended Cross Claims seeking to impose strict liability upon Honeywell [Docket No. 150–1] is **denied**; and it is further,

**ORDERED** that W.R. Grace & Co.'s motion for summary judgment on Counts Two and Twelve of its Third Amended Cross Claims against Honeywell [Docket No. 151–1] is **denied**; and it is further,

**ORDERED** that Honeywell International, Inc.'s cross-motion for summary

judgment against W.R. Grace & Co. for dismissal of Counts Two and Twelve of W.R. Grace & Co.'s Third Amended Cross–Claims [Docket No. 168–1] is **denied**; and it is further,

**ORDERED** that Ecarg, Inc.'s motion for partial summary judgment on Counts Three and Twelve of its Third Amended Cross Claims Against Honeywell [Docket No. 152–1] is **denied**; and it is further,

**ORDERED** that Honeywell International, Inc.'s cross-motion for summary judgment against Ecarg, Inc. seeking dismissal of Counts Three and Twelve of Ecarg, Inc.'s Third Amended CrossClaims [Docket No. 169–1] is **denied**; and it is further,

**ORDERED** that Honeywell International, Inc.'s motion for summary judgment as to the Grace Defendants Third Amended Cross-claims [Docket No. 180–1] is **denied**; and it is further,

**ORDERED** that consolidated Plaintiffs William Sheehan and Hackensack Riverkeeper, Inc.'s motion to stay any further proceedings in the Hackensack Riverkeeper matter, Civil Action No. 00–1451, [Docket No. 239–1] is **granted**; and it is further,

**ORDERED** that Honeywell International, Inc.'s cross-motion to dismiss the Hackensack Riverkeeper matter, Civil Action No. 00–1451, without prejudice [Docket No. 242–1] or in the alternative, to take further discovery [Docket No. 242–2], is **denied**.